STATE of Colorado; Colorado Board of Parole; Gordon W. Heggie, Individually and as Chairman of the Colorado Board of Parole; Daniel Grove, Individually and as Vice-Chairman of the Colorado Board of Parole; Richard A. Sutton and John M. Zapien, Individually and as members of the Colorado Board of Parole, Petitioners,

v.

Marilyn A. MASON, Individually and as Personal Representative of the Estate of Michael D. Mason, Deceased, and as next friend of Christopher Lee Mason, a minor, Respondent.

No. 84SC313.

Supreme Court of Colorado, En Banc.

Sept. 2, 1986.

Rehearing Denied Sept. 29, 1986.

·David R. Brougham, Alan Epstein, Hall & Evans, Denver, for petitioners.

Jim Leventhal, Leventhal & Bogue, P.C., Denver, for respondent.

DUBOFSKY, Justice.

We granted certiorari in *Mason v. State*, 689 P.2d 199 (Colo.App.1984), to consider whether the court of appeals erred in holding that the state of Colorado and the Colorado Board of Parole (parole board) may be held liable in a case in which the individual members of the parole board have official immunity, and, if so, what standard of care is to be applied by a trial court in determining its liability. The court of appeals held that despite the plaintiff's concession that the individual members of the parole board were immune from suit, the parole board as an entity enjoyed no official immunity and the state of Colorado was liable under a theory of respondeat superior. Because we determine that the doctrine of quasi-judicial immunity applies to the parole board and the state of Colorado, as well as to the individual members of the parole board, we reverse the judgment of the court of appeals.

I.

On December 3, 1976, the parole board granted parole to Larry Smith, who had been incarcerated in the Colorado State Reformatory since 1974, serving an indeterminate to thirty-year term for aggravated

robbery.[1] On February 3, 1978, during the course of an armed robbery in Texas, Smith killed twenty-six-year-old Michael Mason, the husband of the plaintiff Marilyn A. Mason and the father of Christopher Lee Mason.

On October 17, 1979, Marilyn A. Mason filed a complaint in her individual capacity, as representative of Michael D. Mason's estate, and as next friend of Christopher Lee Mason, alleging that the parole board carelessly and negligently granted Smith parole on December 3, 1976. The defendants—the state of Colorado, the parole board, and the individual members of the parole board—moved to dismiss the complaint on the ground that they were immune from suit under the doctrine of official immunity. The Chaffee County District Court granted the motion,[2] ruling that the individual members of the parole board enjoyed immunity for their discretionary acts and that this immunity transferred to the parole board as an entity and to the state of Colorado under section 24–10–106(2), 10 C.R.S. (1982).[3] The district court determined that the parole board members were absolutely immune for their discretionary acts as board members and that the state and the parole board could not "be made to answer for actions for which the individual employees were granted immunity."

In the court of appeals the plaintiff conceded on the basis of that court's decision in *Cooper v. Hollis,* 42 Colo.App. 505, 600 P.2d 109 (1979) that the individual members of the parole board were immune from suit.

However, the court of appeals reversed the district court's dismissal of the complaint against the parole board and the state of Colorado, ruling that the official immunity of the individual members of the parole board did not extend to the parole board as an entity or to the state of Colorado because official immunity is only applicable to individuals. The court of appeals believed that this court's abrogation of sovereign immunity in *Evans v. Board of County Commissioners,* 174 Colo. 97, 482 P.2d 968 (1971), would be rendered meaningless if every governmental entity could enjoy the official immunity of its members. The court also denied the parole board and the state of Colorado official immunity under a theory of respondeat superior because the parole board may act only as an entity; two parole board members must agree in order to parole an inmate. Finally, the court of appeals ruled that sovereign immunity did not bar the plaintiff's suit against the parole board or the state because both entities had waived sovereign immunity by purchasing insurance. § 24–10–104(1), 10 C.R.S. (1982).

## II.

The question before us is whether the rationale for granting parole board members quasi-judicial immunity, a form of official immunity,[4] also entitles the parole board as an entity and the state of Colorado to quasi-judicial immunity. Judges traditionally have been immune from suit for their judicial acts because of the importance of an independent judiciary in which

---

**1.** The district court originally sentenced Smith to two concurrent terms of twenty to thirty years in the state reformatory after Smith pleaded guilty to aggravated robbery and first degree assault. Smith's minimum fixed term was changed to an indeterminate minimum term to comply with the statute then in effect. *Smith v. Johns,* 187 Colo. 388, 532 P.2d 49 (1975); *see also* Ch. 44, sec. 1, § 39–11–302, 1972 Colo. Sess. Laws 190, 248–49 (later § 16–11–302, 8 C.R.S. (1973)).

**2.** The case was transferred from the Denver District Court to Chaffee County District Court on a motion for change of venue. The Chaffee County District Court treated the motion to dis-

miss as a motion for summary judgment under C.R.C.P. 56.

**3.** Section 24–10–106(2) provides as follows:

Nothing in this section shall be construed to constitute a waiver of sovereign immunity where the injury arises from the act, or failure to act, of a public employee where the act is the type of act for which the public employee would be or heretofore has been personally immune from liability.

**4.** Official immunity also encompasses judicial, legislative, prosecutorial, and presidential immunity. *See Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982).

a judge may act without apprehension of the personal consequences. *See Bradley v. Fischer,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871). Under 42 U.S.C. § 1983 (1982) and in claims based on *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), courts have granted judges absolute judicial immunity and those who have comparable functions absolute quasi-judicial immunity in order to promote independent decision making free from undue influence, to prevent unfounded litigation, and to protect against disabling threats. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

In *Higgs v. District Court,* 713 P.2d 840 (Colo.1985), we noted that the United States Supreme Court has adopted a functional approach in resolving official immunity questions under section 1983. The Supreme Court has held that prosecutors pursuing duties intimately associated with the criminal judicial process and federal administrative officials who initiate and participate in administrative proceedings performing functions analogous to those of a prosecutor are entitled to absolute immunity from damage claims for their participation in the proceedings because their actions are quasi-judicial. *See Butz,* 438 U.S. 478, 98 S.Ct. 2894 (federal administrative officials); *Imbler,* 424 U.S. 409, 96 S.Ct. 984 (prosecutors); *see also Harlow,* 457 U.S. 800, 102 S.Ct. 2727 (executive officials have only qualified immunity). In *Higgs,* 713 P.2d 851 n. 15, 851–53, we determined that a prosecutor's advocatory activity, which is quasi-judicial in nature, is entitled to absolute immunity because of the importance of the prosecutor's role as an advocate in the judicial system and the potential effect of a threat of liability on a prosecutor's judgment in deciding which cases to prosecute.

■ When parole board members decide whether to deny, grant, or revoke parole, they perform a function that is essentially judicial in nature. *Anderson v. Boyd,* 714 F.2d 906, 908–09 (9th Cir.1983); *Sellars v. Procunier,* 641 F.2d 1295 (9th Cir.1981), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981). Although the Arizona Supreme Court granted parole board members only qualified immunity in *Grimm v. Arizona Board of Pardons and Paroles,* 115 Ariz. 260, 564 P.2d 1227 (1977), federal courts under section 1983, almost without exception, have found that parole board members are entitled to absolute quasi-judicial immunity [5] because, like judges, parole board members must render impartial decisions in cases that excite strong feelings, because parole board members face the risk of unfounded suits by those disappointed by their decisions, and because of the importance of allowing parole board members to make decisions free from the fear of litigation. *Sellars,* 641 F.2d at 1303; *see also Anderson,* 714 F.2d at 909 (absolute quasi-judicial immunity protects parole boards against distorting influences). The importance of impartial decision making, the possibility of unfounded suits and the need for freedom from fear of litigation support providing the protection of absolute quasi-judicial immunity to parole board members.[6]

---

5. *See, e.g., Douglas v. Muncy,* 570 F.2d 499 (4th Cir.1978); *Pope v. Chew,* 521 F.2d 400 (4th Cir. 1975); *Garvey v. Casson,* 423 F.Supp. 68 (D.Del. 1976); *Pate v. Alabama Board of Pardons and Paroles,* 409 F.Supp. 478 (M.D.Ala.1976); *Fitzgerald v. Procunier,* 393 F.Supp. 335 (N.D.Cal. 1975); *Bricker v. Michigan Parole Board,* 405 F.Supp. 1340 (E.D.Mich.1975); *Franklin v. Shields,* 399 F.Supp. 309 (W.D.Va.1975), *aff'd in part, rev'd in part on other grounds,* 569 F.2d 784 (4th Cir.1977), *cert. denied,* 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978); *Reiff v.*

*Pennsylvania,* 397 F.Supp. 345 (E.D.Pa.1975). *But see Henzel v. Gerstein,* 608 F.2d 654 (5th Cir.1979); *Gahagan v. Pennsylvania Board of Probation and Parole,* 444 F.Supp. 1326 (E.D.Pa. 1978); *Joyce v. Gilligan,* 383 F.Supp. 1028 (N.D. Ohio 1974), *aff'd mem.,* 510 F.2d 976 (6th Cir. 1975).

6. Parole board members are entitled to quasi-judicial immunity for the board's quasi-judicial functions, not for the board's supervisory functions. *See Anderson,* 714 F.2d at 910 (parole

■ At the time of Smith's parole, the parole board consisted of four members appointed by the governor. § 17–2–201(1), 8 C.R.S. (1978),[7] and it acted as an entity because any action by the board required the concurrence of at least two members. *See* § 17–2–201(9)(a), 8 C.R.S. (1978). If the fact that the parole board acts as an entity has significance, the same concerns that require that the individual members of the parole board be immune to suit also require that the parole board as an entity and the state of Colorado be immune. *See Pate v. Alabama Board of Pardons and Paroles,* 409 F.Supp. 478 (M.D.Ala.1976). If the parole board and the state of Colorado are subject to suit when the individual members of the parole board are immune, the parole board's adjudicatory process will be hampered. Whether the State of Colorado, the parole board as an entity, or the individual members of the parole board are sued, the members face the prospect of devoting time to being deposed and testifying in court for each grant, refusal, or revocation of parole, leaving parole board members less time to perform the difficult task of determining when a person is ready for release from institutional custody and whether release is compatible with the welfare of society.[8] Other courts have held that parole boards, as entities, enjoy quasi-judicial immunity. *See Pate,* 409 F.Supp. 478; *cf. Recent Developments—Torts—Parole Board Members Have Only Qualified Immunity to Release Prisoners,* 46 Fordham L.Rev. 1301, 1314 (1978) ("[m]ost courts which have considered the question have found parole board members (or the governmental unit) absolutely immune on the grounds that such decisions involve the exercise of discretion"). The quasi-judicial immunity of the individual members of the parole board has little significance unless the parole board as an entity and the state of Colorado also are entitled to the benefit of quasi-judicial immunity.

Contrary to the court of appeals' conclusion that only individuals are entitled to official immunity, it is the quasi-judicial immunity of the state and its entities that entitles the members of the parole board to quasi-judicial immunity. "Even when a State is subject to tort liability, it and its governmental agencies are immune to the liability for acts and omissions constituting (a) The exercise of a judicial or legislative function...." *Restatement (Second) of Torts* § 895(B)(3), at 400 (1979). It is this judicial immunity of the state and its governmental agencies that may be extended to governmental officers performing quasi-judicial functions. *See id.* comment c, at 402–03.[9]

We recognize that the absolute quasi-judicial immunity of the parole board members, the parole board as an entity, and the state leaves the plaintiff without remedy even if the parole board's release of Smith was careless and negligent. Qualified immunity, as contrasted with absolute immunity, would leave the parole board liable for conduct involving discretionary functions violating "clearly established statutory or

board entitled only to qualified immunity when board allegedly disseminated false information regarding a defendant's criminal record to state police).

7. Section 17–2–201 has been amended extensively since 1976. *See* § 17–2–201, 8 C.R.S. (1985 Supp.). The discussion of section 17–2–201 in the text involves the provisions in effect in 1976.

8. In 1976 the parole board could parole any person sentenced to the state penitentiary who had served his minimum sentence less time allowed for good behavior or who had been sentenced to the state reformatory when "there [was] a strong and reasonable probability that the person [would] not thereafter violate the law and that his release from institutional custody [was] compatible with the welfare of socie-

ty." § 17–2–201(3)(b), (c), 8 C.R.S. (1978). The parole board also has authority to revoke parole based on the recommendation of a parole officer or a director or assistant director of the division of adult services. *See* §§ 17–2–201(9), 17–2–103(1), 8 C.R.S. (1978). Section 17–2–103 also has been amended extensively since 1976. *See* § 17–2–103, 8 C.R.S. (1985 Supp.).

9. Because we hold that the state of Colorado and its entities are entitled to quasi-judicial immunity, we need not address the state of Colorado and the parole board's assertion that they are entitled to the individual employees' quasi-judicial immunity under the theory of respondeat superior.

constitutional rights of which a reasonable person would have known." *Higgs*, 713 P.2d at 852 (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738). Granting the parole board as an entity and the state only qualified immunity would not serve the public interest, however, because it would jeopardize the independent action of parole boards. *Cf. Imbler*, 424 U.S. 409, 96 S.Ct. 984 (giving prosecutor who knowingly used false testimony and suppressed material evidence at defendant's trial qualified immunity only would subject all prosecutors to retaliation).

The parole board's discretion, however, has limits. At the time Smith was paroled, granting or denying parole required the concurrence of at least two members of the parole board, after an interview with the inmate. § 17–2–201(9)(a). When two members did not concur, a third member was to review the record, interview the applicant if necessary, and cast the deciding vote. *Id.* Moreover, if parole was granted, it could be revoked after a hearing in front of a parole board member, subject to an appeal before three members of the parole board. §§ 17–2–103, 8 C.R.S. (1978); 17–2–201(9), 8 C.R.S. (1978). Parole may be revoked both for a violation of the laws and for violation of a condition of parole. *See* § 17–2–103(1). The discretion of parole board members is also circumscribed by the statutory limit on the members' terms and the requirement of reappointment by the governor. § 17–2–201(1), 8 C.R.S. (1978).

The plaintiff asserts that even if the parole board and the state are immune from suit, their quasi-judicial immunity is waived by the state's purchase of insurance under section 24–10–104(1), 10 C.R.S. (1982).[10] This section concerns the waiver or nonwaiver of sovereign immunity, a type of immunity not at issue in this case. The Colorado Governmental Immunity Act was based largely on recommendations of the legislative council in a report to the General Assembly. Colorado Legislative Council, Governmental Liability in Colorado, Research Pub. No. 134 at xxvii-lii (Nov. 1968). That report acknowledged the existence of common law bases for nonliability apart from sovereign immunity, *id.* at 16–17, and noted that a public entity should not be liable for an employee's negligence if the employee is immune from suit. *Id.* at 141.

Because we hold that the policies that entitle the individual members of the parole board to quasi-judicial immunity also entitle the parole board as an entity and the state of Colorado to quasi-judicial immunity, we need not determine the standard of care to be applied by a trial court in determining the parole board or the state's liability.

Judgment is reversed and the case is remanded to the court of appeals with directions to reinstate the judgment of the district court.

---

**10.** Section 24–10–104(1) provides as follows:. Notwithstanding any provision of law or of this article to the contrary, if a public entity provides insurance coverage provided by an insurance company authorized to do business in this state to insure itself against liability for any injury or to insure any of its employees against his liability for any injury resulting from an act or omission by such employee acting within the scope of his employment, then such public entity shall be deemed to have waived the defense of sovereign immunity in any action for damages for any such injury insured against....