Richard K. Rediger, Hall & Evans and Marleen Langfield, Asst. Atty. Gen., Denver, Colo., for defendants.

**Arthur Everett SMALL, Jr., Plaintiff,**

v.

**Richard A. SUTTON, John M. Zapiens, Donald Pacheco, Burdette Knous, and Chris Wilkerson, Individually and as Members, Colorado Parole Board, Defendants.**

Civ. A. No. 85–K–936.

United States District Court,
D. Colorado.

Feb. 18, 1987.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

In this civil rights case, pursuant to 42 U.S.C. § 1983, defendants filed an objection to the Order of Magistrate Richard B. Harvey dated June 5, 1986. The magistrate's order concluded that various Colorado Parole Board member defendants are entitled only to qualified immunity when they grant, deny, revoke, or as in the instant case, impose the conditions of parole. Defendants argue they are entitled to absolute immunity and thus request dismissal. In the alternative, defendants argue if they are entitled only to qualified immunity, I should dismiss for this reason.

---

## I.

## BACKGROUND

Plaintiff, Arthur Everett Small, Jr., was convicted of sexual assault on a child and sentenced to five years in the Colorado Department of Corrections. When plaintiff became eligible for parole, defendants imposed the standard parole conditions regarding release, residence, conduct, report, weapons and association. The defendant Parole Board also imposed the following additional conditions:

(1) [plaintiff] parolee agrees to participate in a mental health program at the request of his parole agent and complete the program recommended by the proper authorities;

(2) [plaintiff] parolee agrees to participate in a monitored antabuse therapy program, if medically approved, until terminated by his parole agent or the Parole Board. Plaintiff further agrees to pay all costs.

(3) [plaintiff] Arthur Small, will not be in the company of anyone under the age of eighteen without proper adult supervision.

Parole Order/Conditions of Parole, defendants' exhibit 1

Defendants submit plaintiff agreed to the conditions as set forth by his signature, and subsequently was discharged on parole. While plaintiff argues he did not agree to the additional conditions. He maintains he was coerced into signing, since refusal meant continued incarceration. Plaintiff argues the imposition of such conditions subjects him to cruel and unusual punishment, deprives him of due process, and imposes upon him ex post facto penalties. He submits the magistrate's order granting defendants only qualified immunity was fully justified under decisional law and should be upheld. Defendants argue in their discretionary evaluation of the parolee, they deemed it wise and in the best interest of parolee and the public to impose the standard along with the mentioned additional parole conditions.

## II.

## ABSOLUTE IMMUNITY

Total agreement on the issue of immunity is lacking among federal courts as applied to discretionary acts of state parole board members. However, in *Tripati v. United States Immigration and Naturalization Service*, 784 F.2d 345 (10th Cir. 1986), the Tenth Circuit explicitly granted absolute immunity to the role of federal probation officers who assisted in decisions regarding pretrial release and selection of appropriate sentence. The *Tripati* court noted probation officers were intimately associated with a quasi-judicial function, and thus absolutely immune from civil suit for damages. Tripati, as with the instant plaintiff, alleged deprivation of his constitutional rights by parole officers. He alleged probation officers made false statements in a pretrial bond report and a presentence report. Nonetheless, absolute immunity was deemed proper.

The district court in *Tripati*, dismissed the suit against the defendant probation officers, ruling qualified immunity would further policies underlying the official doctrine. On appeal, however, the Tenth Circuit held absolute immunity was applicable to federal probation officers who were intimately associated with the judicial phase of the criminal process. The court made specific mention of the extension of absolute immunity to probation officers in similar situations based on a "quasi-judicial" function analysis. *Huges v. Chesser*, 731 F.2d 1489, 1490 (11th Cir.1984) (granting state probation officer absolute 42 U.S.C. § 1983 immunity); *Spaulding v. Nielsen*, 599 F.2d 728, 729 (5th Cir.1979) (granting absolute immunity to federal probation officers); *Burkes v. Callion*, 433 F.2d 318, 319 (9th Cir.1970), *cert. denied*, 403 U.S. 908, 91 S.Ct. 2217, 29 L.Ed.2d 685 (1971) (granting "similar, if not the same," 42 U.S.C. § 1983 immunity given to judges, to Los Angeles County probation officer). The *Tripati* court explicitly stated agreement with the above circuit court opinions. Finally, *Tripati* recognized probation officers who as-

sist in pretrial release and or sentencing determinations "perform critical roles." The obvious question is whether decisions to discharge on parole and impose accompanying conditions are also quasi-judicial functions "intimately associated with the judicial process" and thus invest parole board members with absolute immunity.

In *Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), the United States Supreme Court decided members of a federal prison's Institution Discipline Committee who heard cases of inmates charged with rules infractions, were entitled to qualified, as opposed to absolute immunity. The court, however, noted it has not yet decided whether state parole officers enjoy absolute immunity as a matter of federal law, but recognized that some federal appellate courts have granted absolute immunity in such cases. *Sellars v. Procunier* 641 F.2d 1295, (9th Cir.1981), *cert. denied* 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981) (granting absolute immunity to state parole officials from civil rights actions); *Evans v. Dillahunty,* 711 F.2d 828, 830–831 (8th Cir.1983); *United States ex rel. Powell v. Irving,* 684 F.2d 494 (7th Cir.1982) (granting absolute immunity from section 1983 damage action to state parole board officials reviewing parole applications).

The *Cleavinger* court refused to perceive the discipline committee's function as a "classic" adjudicatory one, nor to view the committee members as independent, since they are subordinate employees of the warden. The court noted it did not equate the discipline committee membership to service upon a traditional parole board. The court said the parole board is a neutral and detached hearing body, and has been described as an impartial professional body, serving essentially as an arm of the sentencing judge. The *Cleavinger* holding for qualified immunity is applicable to discipline committees, but not to traditional parole boards. The holding envisages application of absolute immunity to federal and state parole officers.

*Cleavinger* cited *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978) for the following factors, among others, to be utilized in determining whether a given situation warrants absolute or qualified immunity: (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

As to the first factor, I find it likely that the threat of unfounded suits by those disappointed by parole board's decisions would interfere with the parole board's execution of its official functions. The setting of parole conditions is a proper function of the board. It requires the balancing of interests of the parolee and the general public. If absolute immunity were denied, the parole board's balancing of interests between parolee and public might be off-set due to the threat of litigation. Thus, threat of suit itself is a factor in assessing the merits of the case. The setting of parole conditions is a vital element in the process for both parolee and the public. As such, it should be determined absent threat.

Regarding the second factor of available safeguards to a parolee to prevent unconstitutional conduct by a parole board, granting absolute immunity represents a lack of civil redress for wronged prisoners or parolees. Broader societal concerns, however, dictate that the balance be struck in favor of freeing board members from the constant fear of retaliatory suits. A parole board performs tasks functionally comparable to judicial ones when deciding to grant, deny or revoke parole. Thus, the board member's role is functionally equivalent to that of a judge and should be granted like immunity. Moreover, a parolee does have an available safeguard to curtail unconstitutional conduct by resort to habe-

as corpus. A private damage action is not essential.

There is compliance with the third factor regarding independence from political influence. C.R.S. § 17–2–201(5)(a) gives the board sole power to grant or refuse parole and to fix the condition(s) of parole. Further, the United States Supreme Court in *Cleavinger* describes the parole board as a neutral and detached hearing body.

Next, precedents demonstrate the Tenth Circuit and other circuits are inclined to grant absolute immunity to parole board members in 42 U.S.C. § 1983 actions. Also, the Supreme Court of Colorado, in *State v. Mason*, 724 P.2d 1289 (Colo.1986), has held parole board members are entitled to absolute quasi-judicial immunity, despite the fact that parolees may be without a remedy. The Colorado Supreme Court reasoned anything less than absolute immunity would jeopardize the independent action of the parole boards.

Turning to the adversarial nature of parole board hearings, I find sufficient opportunity for the parolee to represent himself and his position. A parolee is allowed to testify or make argument as to why he should be paroled, while the parole board is obligated to consider the parolee's and society's interests.

Finally, recognizing that only parole revocations or recissions provide a right to appeal, the correctability of error on appeal factor is a concern. As is often the case, however, a balance between two competing interests must be sought. Here, I find in favor of allowing parole board members to make decisions free from interference or fear of litigation. The burdensome time and effort associated with defending such litigation is decidedly not in the public interest. Applying the functional approach to immunity law, the United States Supreme Court said in *Cleavinger, supra* 106 S.Ct. at 501, that immunity analysis rests on functional categories, not on the status of the defendant. When parole board members decide whether to deny, grant, or revoke, as well as set parole conditions, they are performing a function that is judicial in nature. Qualified immunity would allow parole board members to be liable for their discretionary conduct, thus defeating the objective of providing for independent and impartial parole board decisions. Keeping in line with *Tripati*, defendants as parole board members are entitled to absolute immunity from civil suit for damages where, as here, their challenged activity is intimately associated and involves performance of quasi-judicial functions.

IT IS THEREFORE ORDERED:

1) Defendant's Motion for Reconsideration of Magistrate's Order is granted.

2) Defendant's Motion To Dismiss is granted.