Robert SHORT, Jeffrey Short, Sarah Short, Katherine Short, by their next friend and mother Mary OOSTER-HOUS, Plaintiffs,

v.

James SHORT and Peggy Jessel, Defendants.

Civ. A. No. 89–B–1663.

United States District Court, D. Colorado.

Feb. 9, 1990.

Erin Foster and Richard Ducote, Ducote & Foster, New Orleans, La., and Barbara A. Stark, Denver, Colo., for plaintiffs.

Michael L. Bender and Stephanie B. Boyer, Bender & Treece, P.C., Denver, Colo., for James Short.

Terrance R. Kelly, Kelly, Haglund, Garnsey & Kahn, and Michael T. McConnell and Carol A. Chambers, Long & Jaudon, P.C., Denver, Colo., for Peggy Jessel.

### MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Before me is defendant Peggy Jessel's (Jessel) motion to dismiss the legal malpractice claim filed against her by plaintiffs and defendant Short's (Short) motion to dismiss the child abuse claim filed against him. The motions have been fully briefed and oral argument will not assist me in their resolution.

The claim against Jessel arises from Jessel's conduct while acting as a court appointed guardian ad litem for minor children in a domestic relations dispute in Colorado state court. As a court appointed guardian ad litem under Colorado law, Jessel is an integral part of the judicial proceedings and is protected by absolute quasi-judicial immunity from suit arising from performance of her duties. Therefore I grant her motion to dismiss. Under the doctrine of abstention from domestic dispute cases, Short's motion is similarly well taken. Therefore I grant his motion to dismiss without prejudice.

Plaintiff Oosterhous and defendant Short have four children by marriage. Oosterhous and Short are now divorced. A child custody battle continues in Boulder County

**1038**

District Court. Case No. 85 DR 1737. Plaintiff Mary Oosterhous filed a complaint in this Court on behalf of the children alleging that defendant Jessel negligently performed her duties as a court appointed guardian ad litem of the four minor children and that Short abused the children.

## I. ABSOLUTE QUASI-JUDICIAL IMMUNITY AND THE GUARDIAN AD LITEM

Immunity from suit attaches to the actions of quasi-judicial officers acting within the scope of their authority. *Higgs v. District Court,* 713 P.2d 840, 850–51 (Colo. 1985). Plaintiff does not allege that Jessel acted outside her role as guardian ad litem or that she conducted herself maliciously or in bad faith. Rather, plaintiff's claim is based on pure negligence. Thus, the issue here is whether, as guardian ad litem, Jessel performed as a quasi-judicial officer under Colorado law. Research has revealed no Colorado cases dealing specifically with immunity of a minor's court appointed guardian ad litem. Like 42 U.S.C. § 1983 cases, my inquiry here begins with a functional analysis of the guardian ad litem. *See State v. Mason,* 724 P.2d 1289, 1291 (Colo.1986).

Under Colo.Rev.Stat. §§ 14–10–116, 19–10–113(3) and Colo.R.Civ.P. 17(c), a court may appoint a guardian ad litem to represent the interests of a minor child. Jessel was appointed guardian ad litem in the Boulder County action on September 23, 1988. Her function as guardian ad litem in Colorado was to "determine and recommend those available alternatives which are in the best interests of the child." *See In re Marriage of Barnthouse,* 765 P.2d 610, 612 (Colo.App.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1747, 104 L.Ed.2d 184 (1989). As such, Jessel was acting as an "agent of the court". *See Miller v. Clark,* 144 Colo. 431, 356 P.2d 965, 966 (1960).

Plaintiff argues correctly that quasi-judicial immunity does not necessarily shadow every court appointment. For example, appointed counsel has no license to commit malpractice. *Ferri v. Ackerman,* 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979). This is so because "the primary office per-

formed by appointed counsel parallels the office of privately retained counsel." *Id.* Consequently, plaintiff contends that a guardian ad litem, like appointed counsel, is not cloaked with absolute immunity.

There are, however, important functional differences between a guardian ad litem and court appointed counsel.

The relationship between an attorney and a child is not the same as that between an attorney and an adult client. *See generally* Note, *Lawyering for the Child: Principles of Representation in Custody and Visitation Disputes Arising From Divorce,* 87 Yale L.J. 1126 (1978). * * *

When a statute gives a court the power to appoint an attorney for children in custody disputes, that advocate must represent the children's interests alone. In so doing, the attorney is not to take a passive role but should present all evidence available concerning the child's best interests. The attorney is not simply to parrot the child's expressed wishes. [Citation omitted]. Thus, this obligation imposes a higher degree of objectivity on a child's attorney than that for an attorney representing an adult.

*In re Marriage of Barnthouse,* 765 P.2d at 612. It is this intensified requisite of objectivity that separates a guardian ad litem from an appointed attorney. When a guardian ad litem investigates, makes recommendations to a court, or enters reports, he or she, like the court, must hold paramount the child's best interests. Thus, the guardian ad litem serves as an adjunct of the court. *Miller,* 356 P.2d at 966; *see Myers v. Morris,* 810 F.2d 1437, 1467 (8th Cir.), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987).

In holding that parole board members have quasi-judicial immunity from suit, the Colorado Supreme Court stated: "[w]hen parole board members decide whether to deny, grant, or revoke parole, they perform a function that is essentially judicial in nature." Like parole board members, a guardian ad litem "must render impartial decisions in cases that excite strong feelings," and if without immunity, "face the

risk of unfounded suits by those disappointed by their decisions...." *Mason*, 724 P.2d at 1291.

Indeed, the need for an independent guardian ad litem is particularly compelling in custody disputes. Often, parents are pitted against one another in an intensely personal and militant clash. Innocent children may be pawns in the conflict. To safeguard the best interests of the children, however, the guardian's judgment must remain impartial, unaltered by the intimidating wrath and litigious penchant of disgruntled parents. Fear of liability to one of the parents can warp judgment that is crucial to vigilant loyalty for what is best for the child; the guardian's focus must not be diverted to appeasement of antagonistic parents. *See Ward v. San Diego County Dep't of Social Serv.*, 691 F.Supp. 238, 240 (S.D.Cal.1988).

There is a countervailing public policy concern of preserving guardian ad litem accountability. However, there are judicial mechanisms in place to prevent abuse, misconduct and irresponsibility. First, the immunity attaches only to conduct within the scope of a guardian ad litem's duties. Second, the appointing court oversees the guardian ad litem's discharge of those duties, with the power of removal. Third, parents can move the court for termination of the guardian. Fourth, the court is not bound by and need not accept the recommendations of the guardian. The court can modify or reject the recommendations as it deems appropriate. Parents, of course, may be as involved in the process as they wish. Finally, determinations adopted by an appointing court are subject to judicial review. These procedural safeguards make threat of civil liability unnecessary. *See Ward*, 691 F.Supp. at 240–41.

■ I hold that a court appointed guardian ad litem in service of the public interest in the welfare of children is squarely within the judicial process. *See Myers*, 810 F.2d at 1467; *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir.1984). Acting as such, a court appointed guardian ad litem is thus entitled to absolute quasi-judicial immunity.

It makes no difference that Oosterhous purportedly brings this suit on behalf of her children and not in her own name. The guardian ad litem has a duty to protect the interests of the children, *even if contrary to the children's wishes. In re Marriage of Barnthouse*, 765 P.2d at 612. Hence, even if the filing of the suit on the children's behalf is bona fide, public policy concerns entitle the guardian ad litem to immunity from suit brought by the children for negligence. If parents could evade the immunity by merely bringing the suit in the name of the children, the ploy would ravage the principal public policy goals underlying immunity.

The importance of impartial decision making, the potential for unfounded suits and the need for freedom from fear of litigation support providing the protection of absolute quasi-judicial immunity to Jessel as guardian ad litem. *See Mason*, 724 P.2d at 1291; *Cok v. Cosentino*, 876 F.2d 1 (1st Cir.1989); *Tindell v. Rogosheske*, 428 N.W.2d 386, 387 (Minn.1988). Without immunity, guardians ad litem would act like litigation lightening rods. Lawsuits would, in the words of Learned Hand, "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

## II. DOMESTIC RELATIONS EXCEPTION TO DIVERSITY JURISDICTION

■ Plaintiffs' complaint alleges that Short abused his children. I agree with Short that the claim arises out of continuing domestic disputes. Therefore, under the domestic relations exception to diversity jurisdiction, I abstain from opening the doors of this federal forum to plaintiffs on that claim. The claim is and should remain in state court.

This District has adopted the "well-respected case law, in which federal courts have declined to exercise jurisdiction in domestic relations cases...." *Casida v. Casida*, 580 F.Supp. 857, 858 (D.Colo.1984) (Weinshienk, J). The "compelling policy

reasons" for abstention were listed by the Fifth Circuit in *Jagiella v. Jagiella*, 647 F.2d 561, 564 (5th Cir.1981) as:

> the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts.

*See Tuerffs v. Tuerffs*, 117 F.R.D. 674, 675 (D.Colo.1987) (Finesilver, C.J.); *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 512–16 (2d Cir.1973).

■ However, even when domestic relation matters are involved, a federal court may be a proper forum where the claims arise from tortious conduct or out of contract. *Goins v. Goins*, 777 F.2d 1059, 1061 (5th Cir.1985). In such cases, abstention is still appropriate if the determination of the issues at hand would involve this Court inextricably in matters properly committed to the jurisdiction of the state court. *See Casida*, 580 F.Supp. at 859; *Kilduff v. Kilduff*, 473 F.Supp. 873, 874 (S.D.N.Y. 1979). Thus, " 'a federal court may well decline jurisdiction if the tortious conduct is part of an ongoing series of disputes centering around the marital relationship.' " *Kilduff*, 473 F.Supp. at 874 (quoting Wright & Miller, *Federal Practice and Procedure*, § 3609).

Assuming that under Colorado law plaintiffs' allegations state a claim in tort, it is undisputed that such claim has been presented and is currently an issue in ongoing state judicial child custody proceedings. The state court possess continuing jurisdiction over its decrees. It has the requisite expertise to oversee and modify its rulings when appropriate. The state court's involvement includes making detailed findings of fact and conclusions of law concerning the child abuse allegations presented to this Court.

Because plaintiffs' claim would necessitate a reevaluation of issues and evidence properly presented and addressed in the state proceedings, this suit clearly falls within the domestic relations exception to federal jurisdiction. *See Rogers v. Janzen*, 891 F.2d 95, 97–99 (5th Cir.1989). As Judge Weinshienk held, abstention is particularly appropriate where, as here, the state court possesses *continuing* jurisdiction to supervise and modify its decrees and orders. *Casida*, 580 F.Supp. at 859.

Plaintiffs' complaint seeks money damages for the alleged abuse. However, the characterization of the suit as one for recovery of damages incurred as a result of tortious conduct does not save it from the well-established and principled domestic dispute abstention doctrine. "Stripped of its verbiage, this is no more-and no less-than a domestic relations case." *Bacon v. Bacon*, 365 F.Supp. 1019, 1018 (D.Or.1973). The present suit is inextricably bound to the state court proceeding. As such, abstention is proper here.

### III. ATTORNEY FEES

■ Finally, it has not been shown that plaintiffs' complaint is not well grounded in fact and it appears to be based upon a good faith argument for extension or modification of existing law in Colorado. *See* Fed. R.Civ.P. 11. Also, the complaint does not lack "substantial justification" under Colo. Rev.Stat. § 13–17–102(2) (1987). Therefore, I decline to grant Jessel's motion for attorney fees under either authority.

Accordingly, it is ORDERED that Defendant Jessel's Motion to Dismiss is GRANTED, each party to pay their own costs.

It is FURTHER ORDERED that Defendant Jessel's motion for attorney fees is denied.

It is FURTHER ORDERED that Defendant Short's Motion to Dismiss is GRANTED without prejudice, each party to pay their own costs.