Paige K. BERNDT and Kaitlin I. Berndt, minors by their Guardian ad Litem, Mark A. Peterson, Plaintiffs-Appellants, †

and Lauralie H. BLADER, Plaintiff,

v.

Louis J. MOLEPSKE, Defendant,

Dennis J. MASSOGLIA and National Union Fire Insurance Company of Pittsburgh, Defendants-Respondents.

Court of Appeals

*No. 96–2620. Submitted on briefs March 7, 1997.—Decided May 1, 1997.*

(Also reported in 565 N.W.2d 549.)

†Petition to review granted.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Mark A. Peterson* and *Robert K. Bultman* of *McNally, Maloney & Peterson, S. C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Charles H. Bohl* and *John P. Spector* of *Whyte Hirschboeck Dudek, S.C.* of Milwaukee.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

DYKMAN, P.J. Paige Berndt and Kaitlin Berndt, by their guardian ad litem, appeal from a summary judgment dismissing their negligence action against Dennis J. Massoglia and National Union Fire Insurance Company of Pittsburgh, Massoglia's professional liability insurer. Massoglia was Paige and Kaitlin's guardian ad litem during their parents' divorce proceeding. The issue is whether guardians ad litem may be held liable for negligently performing their duties during divorce proceedings. We conclude that a guardian ad litem's role during divorce proceedings is an integral part of the judicial process, and therefore quasi-judicial immunity extends to a guardian ad litem's negligent performance during these proceedings. Accordingly, we affirm the judgment of the circuit court.

## BACKGROUND

Steven Berndt and Lauralie Blader were married on December 5, 1987. In April of 1990, Berndt filed a

petition for divorce. On May 5, 1990, the family court issued a temporary order awarding Berndt and Blader joint custody of their children, Paige and Kaitlin. On May 10, 1990, Massoglia was appointed as guardian ad litem to represent the children's best interests during the divorce proceedings.

The divorce trial was conducted in February 1991. At issue were allegations that Berndt had sexually abused the children. Three psychologists testified regarding the alleged sexual abuse. Dr. Richard Williams, who had examined the children at Blader's request, testified that he "lean[ed] towards the probability there was sexual abuse" of the children. Dr. Sue Seitz, who examined the children at Berndt's request, testified that she found no evidence to substantiate the allegation that the children had been sexually abused. And Dr. Jay Cleve, who examined the children at Massoglia's request, testified that he could not express a definitive opinion on the issue of abuse.

On March 28, 1991, the court awarded Blader and Berndt joint custody of the children, with Berndt having primary physical placement and Blader temporary physical placement. The court gave greater credibility to the testimony of Seitz than to the testimony of Williams and found that the alleged sexual abuse did not occur. At the same time, the court discharged Massoglia as guardian ad litem.

After the divorce, Blader obtained the court's permission to take the children out of state for the Easter holiday. Blader did not return custody to Berndt as scheduled, and a criminal complaint was filed against Blader for interfering with Berndt's custody of the children. Blader returned to Wisconsin with the children and surrendered to authorities on May 24,

1991. Physical placement of the children was formally returned to Berndt.

On July 31, 1991, Paige and Kaitlin were placed in a foster home after a CHIPS petition was filed alleging that Berndt had sexually abused the children. On February 12, 1992, Berndt was charged with sexually assaulting the children between June 1, 1991 and August 1, 1991. He was found guilty and sentenced to Waupun Correctional Institution. On September 16, 1992, the court transferred physical custody of the children from the foster home back to Blader.

On October 12, 1993, Paige and Kaitlin brought suit against Massoglia, alleging that he negligently performed his duties as their guardian ad litem and that this negligence was a cause of their injuries.[1] Massoglia moved for summary judgment, arguing that he was entitled to quasi-judicial immunity. The circuit court agreed and dismissed the claim against Massoglia and his insurer. Paige and Kaitlin appeal.

## DISCUSSION

■■■■

An immunity is a freedom from suit or liability conferred upon a defendant because of the defendant's status or position. *Ford v. Kenosha County*, 160 Wis. 2d 485, 495, 466 N.W.2d 646, 650 (1991). The Wisconsin Supreme Court has adopted a functional approach for determining whether immunity attaches, stating that "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it

---

[1] The plaintiffs also brought suit against Louis Molepske, who represented Blader during the divorce and custody proceedings. Molepske is not a party to this appeal.

attaches." *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)).

A judge is absolutely immune from liability for damages when performing judicial acts within the judge's jurisdiction. *Id.* This is called judicial immunity. *Id.* at 498, 466 N.W.2d at 651. Similarly, quasi-judicial absolute immunity extends to non-judicial officers when they are performing acts "intimately related to the judicial process." *Id.* at 497–48, 466 N.W.2d at 651 (quoting *Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir. 1980)).

Massoglia argues that he is entitled to quasi-judicial immunity. Accordingly, we must determine whether a guardian ad litem's role during divorce proceedings is "intimately related to the judicial process." We turn to the relevant statutes for guidance. Section 767.045(4), STATS., sets forth the responsibilities of guardians ad litem for minor children. It provides that "[t]he guardian ad litem shall be an advocate for *the bests interests of a minor child* as to . . . legal custody . . . ." (Emphasis added.) Similarly, § 767.24, STATS., sets forth the responsibilities of the court in making its custody determinations. Section 767.24(5) provides that "[i]n determining legal custody . . ., the court shall consider all facts relevant to *the best interests of the child*." (Emphasis added.) The best interests of the child is the court's paramount consideration in determining custody. *Johnson v. Johnson*, 78 Wis. 2d 137, 148, 254 N.W.2d 198, 204 (1977).

Considering the duties of both the court and the guardian ad litem in divorce proceedings involving custody disputes, we conclude that the guardian ad

litem's function is intimately related to the judicial process. The interest that the guardian ad litem advocates is the same interest that the court considers in making its determination. The guardian ad litem and the court have the same responsibility—to promote the children's best interests. Because their functions are intimately related, the guardian ad litem has absolute quasi-judicial immunity for the negligent performance of these duties.

Our conclusion is consistent with the majority of jurisdictions that have considered this issue. Using the same functional analysis employed by Wisconsin, several state and federal courts have concluded that guardians ad litem are absolutely immune from liability for the performance of their duties. *See Scheib v. Grant*, 22 F.3d 149 (7th Cir. 1994) (proceeding to prevent removal of child from state); *Cok v. Cosentino*, 876 F.2d 1 (1st Cir. 1989) (divorce proceeding); *Myers v. Morris*, 810 F.2d 1437, 1465–67 (8th Cir. 1987) (investigation of child sexual abuse); *Kurzawa v. Mueller*, 732 F.2d 1456 (6th Cir. 1984) (proceeding to terminate parental rights); *Short v. Short*, 730 F. Supp. 1037 (D. Colo. 1990) (domestic relations dispute); *Ward v. San Diego County Dep't of Soc. Servs.*, 691 F. Supp. 238 (S.D. Cal. 1988) (dependency proceeding); *Tindell v. Rogosheske*, 428 N.W.2d 386 (Minn. 1988) (paternity and child support proceeding); *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376 (Mo. Ct. App. 1993) (custody proceeding); *Penn v. McMonagle*, 573 N.E.2d 1234 (Ohio Ct. App. 1990) (divorce proceeding).

Several courts have also recognized that this extension of quasi-judicial immunity to guardians ad litem is consistent with sound public policy. For example, *Ward v. San Diego County Dep't of Soc. Servs.*, 691 F. Supp. 238, 240 (S.D. Cal. 1988), states:

> A guardian ad litem serves to provide the court with independent information regarding the placement or disposition which is in the best interests of the child. This independent determination is crucial to the court's decision. The threat of civil liability would seriously impair the ability of the guardian ad litem to independently investigate the facts and to report his or her findings to the court. As a result, the ability of the judge to perform his or her judicial duties would be impaired and the ascertainment of truth obstructed.

*See also Kurzawa*, 732 F.2d at 1458 ("A guardian ad litem must . . . be able to function without the worry of possible later harassment and intimidation from dissatisfied parents. . . . A failure to grant immunity would hamper the duties of a guardian ad litem in his role as advocate for the child in judicial proceedings.").

Furthermore, the court in *Short v. Short*, 730 F. Supp. 1037 (D. Colo. 1990), recognized the special importance of extending this immunity to guardians ad litem involved in custody proceedings:

> Indeed, the need for an independent guardian ad litem is particularly compelling in custody disputes. Often, parents are pitted against one another in an intensely personal and militant clash. Innocent children may be pawns in the conflict. To safeguard the best interests of the children, however, the guardian's judgment must remain impartial, unaltered by the intimidating wrath and litigious penchant of disgruntled parents. Fear of liability to one of the parents can warp judgment that is crucial to vigilant loyalty for what is best for the child; the guardian's focus must not be diverted to appeasement of antagonistic parents.

*Id.* at 1039. Our result is consistent with these public policy considerations.

Paige and Kaitlin argue that this case is distinguishable from the other cases that have held guardians ad litem immune from suit because their claim of negligence is based on their guardian ad litem's inaction, not his actions. We do not see the relevance of this distinction. Immunity attaches not because of the nature of a guardian ad litem's negligence, but because of the nature of a guardian ad litem's court-appointed duties. Nonetheless, other courts have considered a guardian ad litem's inactions and concluded that immunity extends to omission liability as well. *See, e.g., State ex rel. Bird v. Weinstock*, 864 S.W.2d 376 (Mo. Ct. App. 1993).

In addition, Paige and Kaitlin argue that the role of a guardian ad litem in custody matters has evolved from one in which the guardian ad litem merely conducts interviews and makes reports to the court to one of active advocacy for the best interests of the children. *See Bahr v. Galonski*, 80 Wis. 2d 72, 82–84, 257 N.W.2d 869, 873–74 (1977); *de Montigny v. de Montigny*, 70 Wis. 2d 131, 142, 233 N.W.2d 463, 469 (1975). They argue that the role of a guardian ad litem is indistinguishable from the role of a court-appointed public defender, who is liable for malpractice. *See Ferri v. Ackerman*, 444 U.S. 193 (1979).

We agree that a guardian ad litem has a duty to actively advocate the best interests of the children. We disagree, however, with the contention that this advocacy is analogous to the advocacy role of a public defender. *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 383–84 (Mo. Ct. App. 1993), effectively distinguishes these roles:

Typically, those to whom immunity has been extended represent the interests of society as a whole. . . . Appointed counsel's principal responsibility is to serve the individual interests of his client. In fact, an indispensable element of his performance is the ability to act independently of the state and to oppose it in adversary litigation. In essence, although . . . there might be other policy bases for extended immunity to appointed counsel, such an extension could not be justified strictly on the basis of function because defense counsel and the court are not on the same side.

In contrast, at least in custody matters, the guardian ad litem has traditionally been viewed as functioning as an agent or arm of the court, to which it owes its principal duty of allegiance, and not strictly as legal counsel to a child client. In essence, the guardian ad litem role fills a void inherent in the procedures required for the adjudication of custody disputes. Absent the assistance of a guardian ad litem, the trial court, charged with rendering a decision in the "best interests of the child," has no practical or effective means to assure itself that all of the requisite information bearing on the question will be brought before it untainted by the parochial interests of the parents. Unhampered by the ex parte and other restrictions that prevent the court from conducting its own investigation of the facts, the guardian ad litem essentially functions as the court's investigative agent, charged with the same ultimate standard that must ultimately govern the court's decision—i.e., the "best interests of the child." Although the child's preferences may, and often should, be considered by the guardian ad litem in performing this traditional role, such preferences are but one fact to be investigated and are not considered binding on the guardian. Thus, the obligations of a guardian ad

litem necessarily impose a higher degree of objectivity on a guardian ad litem than is imposed on an attorney for an adult.

*See also Short*, 730 F. Supp. at 1038 ("There are . . . important functional differences between a guardian ad litem and court appointed counsel."). Consistently, we conclude that the role of a guardian ad litem who advocates the best interests of a child is distinguishable from the role of an attorney who advocates the wishes of his or her client.

■ Paige and Kaitlin also argue that this case is distinguishable from others that have considered the quasi-judicial immunity of guardians ad litem because this action was brought on their behalf instead of by one of their parents. This argument has already been considered and rejected:

> The guardian ad litem has a duty to protect the interests of the children, *even if contrary to the children's wishes.* Hence, even if the filing of the suit on the children's behalf is bona fide, public policy concerns entitle the guardian ad litem to immunity from suit brought by the children for negligence. If parents could evade the immunity by merely bringing the suit in the name of the children, the ploy would ravage the principal public policy goals underlying immunity.

*Short*, 730 F. Supp. at 1039 (citation omitted). We agree with this reasoning.

Finally, Paige and Kaitlin argue that unless guardians ad litem are held responsible for the negligent performance of their duties, there are no effective remedies available to an injured party to make guardians ad litem accountable for their failure

582

to properly perform their responsibilities. We acknowledge that the Berndts have one less remedy than other litigants injured by their attorneys' malpractice.[2] But the Wisconsin Supreme Court has already stated that "it is better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Ford v. Kenosha County*, 160 Wis. 2d 485, 495, 466 N.W.2d 646, 650 (1991) (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)).

Moreover, guardians ad litem are accountable for failing to properly perform their duties. Under § 767.045(3), STATS., guardians ad litem must be attorneys admitted to practice in this state. Every attorney in Wisconsin is bound by the Rules of Professional Conduct. Among these rules are requirements that a lawyer provide competent and diligent representation. *See* SCR 20:1.1 and SCR 20:1.3 (Law. Coop. 1996). If a guardian ad litem fails to perform competently or diligently, the Board of Attorneys Professional Responsibility may issue a reprimand or revoke or suspend his or her license. *See* SCR 21.06. This possibility of discipline ensures the accountability of guardians ad litem who fail to properly perform their responsibilities.

*By the Court.*—Judgment affirmed.

---

[2] We do not consider whether Attorney Massoglia was negligent in the performance of his duties, but have presumed negligence solely to permit us to address the arguments relative to quasi-judicial immunity presented by the parties.