ANDRE FREDERICK BILLUPS, SR., AS NEXT FRIEND OF
ANDRE FREDERICK BILLUPS, JR., APPELLANT,
V. EMILY SCOTT, APPELLEE.

571 N.W.2d 603

Filed November 7, 1997.   No. S-96-466.

Andre Frederick Billups, Sr., pro se.

Thomas J. Guilfoyle and John A. Kinney, of Frost, Meyers, Guilfoyle & Govier, for appellee.

WRIGHT, GERRARD, STEPHAN, and McCORMACK, JJ.

PER CURIAM.

Although the title of this case in the pleadings designates the "Guinan and Scott Law Firm" as the defendant, the plaintiff-appellant, Andre Frederick Billups, Sr. (hereinafter Billups), as the next friend of his son, Andre Frederick Billups, Jr., alleges that only the defendant-appellee, attorney Emily Scott, negligently performed her duties as a lawyer representing the son as his appointed guardian ad litem. Following the sustainment of Scott's demurrer, the district court dismissed the action. On our own motion, we, under our authority to regulate the caseloads of this court and that of the Nebraska Court of Appeals, removed this matter to our docket.

## FACTS

In his original petition, Billups in substance alleged that Scott neglected to properly investigate, interview, and subpoena witnesses, and otherwise represent the son's best interests, as the result of which Scott recommended that the son be placed in a home in which there allegedly had been an ongoing history of abuse.

After the district court sustained Scott's demurrer to that petition, it granted Billups leave to file an amended petition. He then filed a document entitled "Amended Petition," but it was more in the nature of a legal memorandum than a pleading designed to state a cause of action. The document contained no specific allegation of facts, but made the bald assertion that Scott "did show gross negligence."

The district court dismissed the action on the basis that Scott was acting within the scope of her duties pursuant to her appointment as guardian ad litem and that she was therefore immune from civil suits.

## ASSIGNMENTS OF ERROR

Billups' assignments of error combine to assert that the district court wrongly (1) dismissed his action without granting him leave to amend and (2) concluded that Scott was immune from suit.

## SCOPE OF REVIEW

In an appellate court's review of a ruling on a general demurrer, the court is required to accept as true all of the facts that are well pled and the proper and reasonable inferences of law and fact that may be drawn therefrom. *Galyen v. Balka, ante* p. 270, 570 N.W.2d 519 (1997); *Fox v. Metromail of Delaware*, 249 Neb. 610, 544 N.W.2d 833 (1996); *Proctor v. Minnesota Mut. Fire & Cas.*, 248 Neb. 289, 534 N.W.2d 326 (1995).

## ANALYSIS

Billups' assignments of error are interrelated, because in order to state a cause of action, one must allege events, acts, and things done or omitted which show a legal liability on the part of the defendant to the plaintiff. See *Giese v. Stice*, 252 Neb. 913, 567 N.W.2d 156 (1997). Thus, if Scott's role and work as a guardian ad litem entitle her to immunity, then Billups clearly does not have a cause of action against her that will survive a demurrer. If that is the situation, the district court did not err in not permitting Billups further leave to amend, for if, upon the sustainment of a demurrer, it is clear that no reasonable possibility exists that an amendment will correct a pleading defect, leave to amend need not be granted. See *Giese, supra.*

Although through the adoption of our commissioners' opinion in *Boden v. Mier*, 71 Neb. 191, 98 N.W. 701 (1904), we have declared that the appointment of a guardian ad litem is not a mere matter of form and that such guardian should prepare and conduct the defense of the ward with as much care as though acting under a retainer, we have not heretofore considered whether a guardian ad litem enjoys civil immunity in the performance of the duties attendant to that office. Such determination necessarily requires a review of the role of a guardian ad litem.

In *Orr v. Knowles*, 215 Neb. 49, 337 N.W.2d 699 (1983), we distinguished between the role of such a guardian and that of an

attorney and noted that the duties and responsibilities of a guardian ad litem are not coextensive with those of an attorney. While an attorney serving as counsel acts in accordance with the client's wishes within the limits of the law, a guardian ad litem, generally speaking, steps into the position of the ward and, after considering the alternatives, asserts the right of the ward as the guardian ad litem sees fit. We also observed in *Orr* that, at least in certain contexts, the functions of a guardian ad litem are ministerial and not judicial or quasi-judicial.

We have recognized, however, that immunity from any suit for damages based upon the performance of duties within one's authority attaches to particular official functions, not to particular offices. *Talbot v. Douglas County*, 249 Neb. 620, 544 N.W.2d 839 (1996), citing *Forrester v. White*, 484 U.S. 219, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988). Under *Forrester*, in determining whether to grant such immunity, courts examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions.

In *Talbot*, a woman sued an attorney in a county attorney's office who had promised that he would collect delinquent child support and alimony for her. The attorney was negligent in pursuing the collection, and the woman sued. We denied the attorney immunity, distinguishing the situation therein presented from that presented in *Koch v. Grimminger*, 192 Neb. 706, 223 N.W.2d 833 (1974), in which a prosecutor was granted immunity on the ground that prosecuting is a quasi-judicial function. We reasoned that as the *Talbot* attorney had agreed to represent the woman, he was acting as an advocate, which is not a quasi-judicial function.

Because it is the official functions performed, and not the office held, which is determinative, we have extended civil immunity to a psychiatrist directed by a court to evaluate an accused for the purpose of determining his competency to stand trial. We held that the psychiatrist was entitled to absolute immunity from suit for damages based on the examination made within the scope of the psychiatrist's authority and while acting without willfulness, malice, or corruption. *Gallion v. Woytassek*, 244 Neb. 15, 504 N.W.2d 76 (1993).

We have also written that an officer acting in a quasi-judicial capacity " ' "is usually given immunity from liability to persons who may be injured as the result of an erroneous decision, provided the acts complained of are done within the scope of the officer's authority, and without wilfulness, malice, or corruption." ' " *Koch,* 192 Neb. at 709, 223 N.W.2d at 835 (quoting *Allen v. Miller,* 142 Neb. 469, 6 N.W.2d 594 (1942)). In addition, we have recognized that immunity exists for officials acting in a ministerial capacity in obeyance of a process regular and valid on its face issuing from a court or tribunal with apparent jurisdiction to issue the same. See, *Gallion, supra; Jeffres v. Countryside Homes,* 214 Neb. 104, 333 N.W.2d 754 (1983); *Koepf v. County of York,* 198 Neb. 67, 251 N.W.2d 866 (1977).

A number of courts have specifically held that guardians ad litem are absolutely immune from liability for actions within the scope of their roles in custody disputes and investigations of sexual abuse. E.g., *Scheib v. Grant,* 22 F.3d 149 (7th Cir. 1994); *Cok v. Cosentino,* 876 F.2d 1 (1st Cir. 1989); *Myers v. Morris,* 810 F.2d 1437 (8th Cir. 1987); *Kurzawa v. Mueller,* 732 F.2d 1456 (6th Cir. 1984); *McKay v. Owens,* 130 Idaho 148, 937 P.2d 1222 (1997); *Babbe v. Peterson,* 514 N.W.2d 726 (Iowa 1994); *Barr v. Day,* 124 Wash. 2d 318, 879 P.2d 912 (1994); *Collins on Behalf of Collins v. Tabet,* 111 N.M. 391, 806 P.2d 40 (1991); *Tindell v. Rogosheske,* 428 N.W.2d 386 (Minn. 1988); *Berndt by Peterson v. Molepske,* 211 Wis. 2d 572, 565 N.W.2d 549 (Wis. App. 1997); *Delcourt v. Silverman,* 919 S.W.2d 777 (Tex. App. 1996); *State ex rel. Bird v. Weinstock,* 864 S.W.2d 376 (Mo. App. 1993); *Penn v. McMonagle,* 60 Ohio App. 3d 149, 573 N.E.2d 1234 (1990); *Delbridge v. Off. of Pub. Def.,* 238 N.J. Super. 288, 569 A.2d 854 (1989).

*Kurzawa, supra,* presented the same fact pattern as the case presently before us. The parents of a minor child brought an action both individually and as next friends of their son against a guardian ad litem for the alleged violation of their civil rights and for common-law malpractice. The trial court sustained the guardian's motion to dismiss, and the appellate court upheld, writing:

> A guardian ad litem must also be able to function without the worry of possible later harassment and intimidation

from dissatisfied parents. Consequently, a grant of absolute immunity would be appropriate. A failure to grant immunity would hamper the duties of a guardian ad litem in his role as advocate for the child in judicial proceedings. 732 F.2d at 1458.

One of the more detailed analyses of the question of immunity for guardians ad litem can be found in *Short by Oosterhous v. Short*, 730 F. Supp. 1037 (D. Colo. 1990). Finding no Colorado cases discussing the issue, the federal court relied on a functional analysis and concluded that since a minor's court-appointed guardian ad litem has the responsibility of determining and recommending the available alternatives that are in the best interests of the ward, the guardian ad litem is an adjunct of the court. *Short* distinguished between guardians ad litem and other court-appointed counsel who may be held accountable for malpractice, noting that in contrast with the duties of an attorney required to follow a client's wishes, a guardian ad litem, while required to be a zealous advocate, must work solely in the ward's best interests, which may be contrary to the ward's wishes. The court noted that guardians ad litem serve in custody cases which often become intensely personal and militant clashes and that the need for guardians ad litem to be objective often results in much dissatisfaction. It reasoned that if that dissatisfaction were permitted to be vented in court, the resulting wave of litigation would reduce not only the number of attorneys willing to serve as guardians, but would also lessen the likelihood of guardians ad litem being truly objective.

In considering the competing interest in preserving accountability for guardians ad litem, the court noted that there are judicial mechanisms in place to prevent abuse, misconduct, and irresponsibility. Those mechanisms are that immunity attaches only to conduct within the scope of a guardian ad litem's duties; the appointing court, which has the power of removal, oversees the guardian ad litem's discharge of those duties; parents, who may be as involved in the process as they wish, can move the court for termination of the guardian; the court is not bound by and need not accept the recommendations of the guardian; and determinations adopted by an appointing court are subject to judicial review. Thus, the *Short* court held that a court-

appointed guardian ad litem was entitled to absolute quasi-judicial immunity.

The South Carolina Supreme Court, in the course of reversing prior holdings, concluded in *Fleming v. Asbill*, 326 S.C. 49, 483 S.E.2d 751 (1997), that the "historical changes that have occurred in the functions guardians perform," 326 S.C. at 54, 483 S.E.2d at 754, now warranted the grant of immunity to shield them from the threat of " 'the intimidating wrath and litigious penchant of disgruntled parents,' " 326 S.C. at 56, 483 S.E.2d at 755. It observed that one of the protections against irresponsibility is that the opposing party may cross-examine the guardian and any witness upon which the guardian relied.

We are persuaded that a guardian ad litem is entitled to absolute immunity from any suit for damages based upon the performance of duties which are within the scope of such guardian's authority, and so hold.

## CONCLUSION

Neither the original petition nor the so-called amended petition alleges any facts from which it can be inferred that Scott did anything other than act within the scope of her duties and authority. The district court therefore did not abuse its discretion by dismissing Billups' case without granting him further leave to amend, and its judgment is affirmed. See *Suzuki v. Gateway Realty*, 207 Neb. 562, 299 N.W.2d 762 (1980).

AFFIRMED.

WHITE, C.J., participating on briefs.

CAPORALE and CONNOLLY, JJ., not participating.