·WASSERMAN and another, Appellants, vs. CITY OF KENOSHA and others, Respondents.

*December 4, 1934—February 5, 1935.*

L. E. *Vaudreuil* of Kenosha, attorney, and *Lyman G. Wheeler* of Milwaukee of counsel, for the appellants.

*Roy S. Stephenson,* city attorney of Kenosha, and *Chester D. Richardson,* assistant city attorney, for the respondents.

FAIRCHILD, J.   The complaint under attack upon this appeal describes a situation which was before this court in *Lindemann v. Kenosha,* 206 Wis. 364, 240 N. W. 373. The facts there pleaded did not constitute a cause of action. Unless the allegations in this complaint with relation to conspiracy and the apprehension on the part of the city of Kenosha and its officials that the revenues of the city might be reduced if the buildings contemplated were to be erected, and that the officers of the city were influenced by a fear that they would not be re-elected unless the permit was revoked, present additional pleadable ultimate facts, this appeal is ruled by the *Lindemann Case.*

The appellants seek to recover damages claimed to have resulted from acts of a municipality of which the individuals named as defendants were officers. The allegations on which reliance is placed to take the complaint out of the rule that no liability for damages is visited upon a municipality or its officials acting within the powers which may be generally described as governmental unless some statute provides therefor, are set out in the statement of facts. In dealing with official acts, consideration must be given to the general policy of the law to protect public officials from the annoyance of

being constantly subjected to actions by individuals disappointed by the vote or ruling of the officials. The issuing or revoking of a building permit is a governmental function, and it remains such a function regardless of the motives or manner in which it is executed or revoked. *State ex rel. Rose v. Superior Court of Milwaukee County,* 105 Wis. 651, 81 N. W. 1046; *Madden v. Kinney,* 116 Wis. 561, 93 N. W. 535. The policy of protecting officials in the discharge of legislative and *quasi*-judicial duties and while acting within the limits fixed by law, is founded on good reasoning and should be adhered to. The rules which are the expression of this policy apply to officials in the performance of duties requiring the exercise of discretion and judgment, and ordinarily the motives which actuate such officials in so acting cannot be inquired into in an action by an individual under a complaint for damages. Such officials, within their jurisdiction, are not liable for damages either for mistake, errors of judgment, or corrupt conduct. As was said in *Land, Log & Lumber Co. v. McIntyre,* 100 Wis. 258, 262, 75 N. W. 964:

. "As said, in effect, by this court, in *Steele v. Dunham,* 26 Wis. 393, such rule applies to all officers in the performance of judicial or *quasi*-judicial duties, to judges from the highest to the lowest, to jurors, and to all public officers whatever name they may bear; and further, in substance, that if it were otherwise, officers, however conscientious and correct in their official life, would be constantly in danger of having their actions challenged in court by disappointed persons, and that independence necessary to the judicial function seriously interfered with. To avoid that danger, judicial officers, high or low, such officers strictly so called and those *quasi*-judicial as well, and all in the performance of duties of a judicial nature, within their jurisdiction, have complete immunity from actions for damages on account of their official acts."

The observation in the *Lindemann Case* that "an officer is not liable for the revocation of a building permit unless

it is shown that he acted corruptly, dishonestly, maliciously, or in bad faith in so doing," was based upon language found in *Rehmann v. Des Moines,* 204 Iowa, 798, 215 N. W. 957. A review of our cases requires us to modify that statement by saying that it does not accurately express the established law of this state. Words of similar import occur in the opinion in the following cases : *Robertson v. Parker,* 99 Wis. 652, 75 N. W. 423; *Langen v. Borkowski,* 188 Wis. 277, 206 N. W. 181; *Reilly v. Andro,* 191 Wis. 597, 211 N. W. 780; *Lowe v. Conroy,* 120 Wis. 151, 97 N. W. 942, but they were not intended to, and do not, reject the rule as stated in *Land, Log & Lumber Co. v. McIntyre, supra.* The case of *Fath v. Koeppel,* 72 Wis. 289, 39 N. W. 539, dealt with the powers and duties of an officer to inspect fish offered for sale in a city, and to destroy such as were unwholesome. His duties were disclosed to be judicial in their nature, and in the opinion it was said, page 293 :

"The powers conferred on the defendant by law, according to the complaint, are plainly and clearly judicial, and of great importance. He is vested with power to determine the quality and healthfulness of fish in market, and, if unwholesome or unfit to be eaten, to condemn and destroy them. This is a high and responsible judicial power, as it concerns the public health, and as it may affect the rights of property ; and the officer exercising such a power is within the protection of that principle, that a judicial officer is not responsible in an action for damages to any one for any judgment he may render, however erroneously, negligently, ignorantly, corruptly, or maliciously he may act in rendering it, if he act within his jurisdiction. This principle is stated and given force in *Steele v. Dunham,* 26 Wis. 393, by the present chief justice, to shield from liability members of an equalizing board or board of review of assessments, who are charged with liability for damages to the plaintiff for corruptly and oppressively increasing the valuation of certain property without proof. Much more should this principle protect from actions for private damages an inspector of fruits and meats, acting in the interests of the public health. This principle protects all officers exercising judicial powers, whatever they

may be called. It is a 'judicial privilege,' and has 'a deep root in the common law,' and found 'asserted in the earliest judicial records, and it has been steadily maintained by an undisturbed current of decisions. *Yates v. Lansing,* 5 Johns. (N. Y.) 291.' . . . But this principle is so elementary, and so well established in all like cases, that reference to any further authorities is unnecessary. The complaint most clearly ranks the defendant as a judicial officer, and places him under the protection of this principle, and it therefore fails to state a cause of action against him."

This case was considered in *Lowe v. Conroy, supra,* and was overruled so far as it conflicted with the right to recover damages for the invasion of private property rights. Conroy was a health officer, and in that case was held to have summarily destroyed private property on the ground that it constituted a menace to public health, when in fact it was not such a menace. The *Conroy Case* was cited in *State ex rel. Bautz v. Harper,* 166 Wis. 303, 165 N. W. 281, in which Harper, a building inspector, had erroneously refused a building permit. It was there said:

"This duty imposed on him by ordinance was clearly of a *quasi*-judicial nature. It is the general rule that officials acting in an honest exercise of their judgment in the discharge of such duties are not liable in damages to private persons for their mistakes and errors. . . . The denial to relator of a building permit is not an invasion of his private property rights and hence does not bring him within the exception specified in the *Lowe Case* making *quasi*-judicial officers responsible in those cases of an invasion of private rights for which the law provides no redress other than in a private action for compensation for the loss sustained."

The rule is as expressed in *Fath v. Koeppel, supra,* and *Land, Log & Lumber Co. v. McIntyre, supra,* as modified in *Lowe v. Conroy, supra.* The *Conroy Case* was based on an unjustifiable invasion and resulting loss of private property. It is there said, page 158:

"The facts and circumstances show, however, that respondent's private property rights have been unjustifiably

invaded, and that he will be remediless in the law, unless it be that appellant and those who actually committed the trespass in wrongfully destroying his property are liable. Under such circumstances *quasi*-judicial officers have been held liable to respond in damages upon the ground that the exercise of this discretion is limited by the superior right guaranteeing to every person immunity from having his private property rights invaded except under the regular course of law, sanctioned by the established customs and usages of the courts. The discretion in which such officers are protected must be limited to the line where their acts invade the private property rights of another, for which invasion the law affords no redress other than an action against the one actually committing the trespass."

This principle will be found discussed in *Bailey v. Berkey* (C. C.), 81 Fed. 737; *Gage v. Springer,* 211 Ill. 200, 71 N. E. 860; *Thomas v. Wilton,* 40 Ohio St. 516; 1 Dillon, Mun. Corp. (5th ed.) p. 771, § 439; p. 772, § 440.

The argument of appellants that, because the permit was issued, they are entitled to be protected against loss for the reason that they expended money in and about the erection of the building, was answered adversely to them in the *Lindemann Case.* One so situated actually desiring to complete the building, may, as pointed out in that case, find relief by means of an injunction against any interference with the right to proceed under the permit. *State ex rel. Carter v. Harper,* 182 Wis. 148, 196 N. W. 451.

The allegations in this complaint, which are not contained in the complaint in the *Lindemann Case,* are addressed to the motives which influenced the officials of the city in forming their conclusion to revoke the building permit. The motive of an official exercising discretionary powers in voting for a particular resolution or taking some certain action cannot be inquired into, and he cannot be made personally liable upon an allegation that he acted maliciously toward the one aggrieved. This is the same rule which applies to judicial officers, and it rests upon the same considerations. The

allegations add nothing in the way of strength to the complaint. The attempt of the pleader to establish the fact that the city was acting in a proprietary capacity and not in its governmental capacity fails because the recital of the transaction necessarily shows that the conduct of the affair, regardless of whether the right conclusion was reached, was in the exercise of the city's governmental and discretionary powers and functions. The allegation that selfish considerations and concern for personal advantage was the controlling motive prompting the officials to act as they did, is subject to similar criticism.

We are of the opinion that the allegations with reference to a conspiracy cannot be construed to mean that the respondents have not acted in a governmental capacity and upon a matter well within their jurisdiction. In *Kasik v. Janssen*, 158 Wis. 606, 149 N. W. 398, it is said:

"The general averments of conspiracy found in the complaint must be construed to mean a concert of agreement and action on the part of the defendants to do the act set forth and complained of in the complaint, and if this act is legal and proper and of such a nature that it can only be carried out by concerted action the result merely is that the pleader's conclusion that there was an illegal or actionable conspiracy is erroneous."

*By the Court.*—Order affirmed, and cause remanded for further proceedings according to law.