[No. 3424-1-III.   Division Three.   June 24, 1980.]

PETER B. MAURO, *Appellant,* v. THE COUNTY OF
KITTITAS, *Respondent.*

*Kenneth Watts, Clement F. Yuse,* and *Casey, Watts & Champagne,* for appellant.

*Joseph Panattoni, Prosecuting Attorney,* and *David H. Goree, Deputy,* for respondent.

ROE, J.—Peter Mauro appeals the summary judgment dismissal of his false arrest suit against defendant county.

Mauro received a citation for speeding in 1976 in Kittitas County. He failed to appear in court on the date set for trial and a warrant was issued for his arrest. He contacted the court and was told that if he paid $60, "We will withdraw the warrant, notify Olympia and clear your record." The money was sent, receipt acknowledged by the court, and an order withdrawing the warrant was executed but

never processed. Because of that, 7 months later in Spokane County, while in the company of his friends, Mauro was arrested on the basis of the outstanding Kittitas County warrant. He was booked into jail and released 5 hours later upon posting bail. He initially sought damages and expungement of his records from the Kittitas County commissioners, but they apparently took no action on the request.

An order withdrawing the warrant actually had been executed by the court commissioner (judge). The Kittitas County Deactivation Process of Warrants requires hand delivery of the order to the sheriff's office for removal from the WACIC[1] computer system. What happened to the order withdrawing the warrant remains a mystery. No one at the court remembers having made the delivery to the sheriff's office and no records at the sheriff's department indicate that delivery was made. Hence, the warrant remained outstanding in the system; this produced the arrest.

Mauro sued the County of Kittitas, the Kittitas County District Court, the commissioner of the court and the sheriffs of Kittitas and Spokane Counties, seeking damages and a writ of mandamus to compel the expungement of all references and records relating to his arrest on the Kittitas bench warrant.

The trial court granted a summary judgment of dismissal, apparently concluding that the defendants were protected by judicial immunity. This appeal is against only the County of Kittitas. We reverse.

Kittitas County urges us to find its actions in this case shielded by judicial immunity, citing *Creelman v. Svenning,* 67 Wn.2d 882, 410 P.2d 606 (1966), and *Loveridge v. Schillberg,* 17 Wn. App. 96, 561 P.2d 1107 (1977). Defendant has misperceived those cases. *Creelman* involved a suit against Snohomish County and the State of Washington for damages as a result of alleged malicious prosecution by the

---

[1]Washington Crime Information Center.

Snohomish County prosecutor. The act in *Creelman* was an "official act," and involved the quasi–judicial immunity enjoyed by the prosecutor.

> All parties concede that the prosecuting attorney, acting as he does in a quasi–judicial capacity, is, as a matter of public policy, immune from liability for acts done in his official capacity.

*Creelman v. Svenning, supra* at 884.

Further:

> If the prosecutor must weigh the possibilities of precipitating tort litigation involving the county and the state against his action in any criminal case, his freedom and independence in proceeding with criminal prosecutions will be at an end.

*Creelman v. Svenning, supra* at 885.

In *Loveridge v. Schillberg, supra,* the prosecuting attorney had failed to furnish statutorily required minimum term information to the parole board. The court, at page 99, classified this action as encompassed by the prosecutor's "function as an advocate" and concluded the action was "intimately associated with the *judicial phase* of the criminal process, . . ." (Italics ours.) *Loveridge v. Schillberg, supra* at 99, quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976). In the case at bench, the actions are not "intimately associated with the judicial phase of the criminal process," nor would they curtail freedom or independence in proceeding therein.

The act in this case was not a judicial act because the order had been executed by the judge. It was not a discretionary act, but was a purely ministerial act of a clerk of either the court or the sheriff's department. In *Loveridge,* the prosecutor was under a duty to perform an act. In the case at bench, the judge had already signed the order withdrawing the warrant.

In a case with similar facts, *Dalton v. Hysell,* 56 Ohio App. 2d 109, 381 N.E.2d 955 (1978), a clerk failed to record the payment of a fine, which resulted in the issuance of an arrest warrant and in Dalton's subsequent arrest while at

work. Dalton sued the court clerk personally for negligent failure to record payment. The court held that judicial immunity would not apply to protect the clerk from a negligence suit for failure to perform a ministerial act, stating that civil liability would tend to encourage the proper performance of ministerial duties.

We are also persuaded by *Owen v. Independence,* 445 U.S. 622, 63 L. Ed. 2d 673, 100 S. Ct. 1398 (1980). The City of Independence was claiming immunity from liability for the tortious acts of city officers. The court stated that "there is no tradition of immunity for municipal corporations," *Owen v. Independence,* 445 U.S. at 638, 63 L. Ed. 2d at 685, and, in contrast to personal immunity granted to the officers:

> Here, in contrast, only the liability of the municipality itself is at issue, not that of its officers, and in the absence of an immunity, any recovery would come from public funds.

*Owen v. Independence,* 445 U.S. at 638 n.18, 63 L. Ed. 2d at 686. The court concluded that the injustice of leaving victims of municipal wrongs remediless, and the fact that public policy considerations are not applicable to the governing body as they would be to the officer personally, required a holding that there is no immunity for the municipality. Finally, the court emphasized that there is no personal monetary liability. The money would come from the public fisc, which might increase the concern of the city to assure that public officials' acts are not tortious.

On the facts of this case, judicial immunity may not be used to shield the county from a suit for damages based on the ministerial nonfeasance of an employee of the county.[2]

---

[2]*Stump v. Sparkman,* 435 U.S. 349, 55 L. Ed. 2d 331, 98 S. Ct. 1099 (1978), is inapposite because the action there—a judge's decision to order the sterilization of a retarded girl—was not ministerial. The act of the judge involved a matter which could be within the jurisdiction of the court. *In re Hayes,* 93 Wn.2d 228, 231-32, 608 P.2d 635 (1980), "The court determined the judge's conduct in entertaining and approving the petition for sterilization constituted a judicial act, and that he had not acted in the clear absence of all jurisdiction", citing *Stump v. Sparkman, supra.* Similarly, the doctrine of sovereign immunity does not apply

Accordingly, the trial court is reversed and the case is remanded for trial on the issues of damages and expungement.

McINTURFF, A.C.J., and MUNSON, J., concur.

because this was a ministerial and not a discretionary act. *Evangelical United Brethren Church of Adna v. State,* 67 Wn.2d 246, 407 P.2d 440 (1965).