Darryl E. FORD, Plaintiff-Appellant,

v.

KENOSHA COUNTY, its Officials, Agents and
Employees, Defendants-Respondents.

Supreme Court

*No. 89–1046. Argued October 4, 1990.—Decided March 11,
1991.*

(Also reported in 466 N.W.2d 646.)

487

For the plaintiff-appellant there were briefs (in the court of appeals) by *Walter W. Stern* and *Stern, Caviale & Stern,* Kenosha and oral argument by *Walter W. Stern.*

For the defendants-respondents there was a brief (in the court of appeals) and oral argument by *Bernard R. Vash,* Kenosha County Corporation Counsel.

DAY, J. This case is before the court on certification from the court of appeals pursuant to section 809.61, Stats. 1987-88. Darryl E. Ford appeals from a judgment entered by the circuit court of Kenosha County, the Honorable Michael S. Fisher, presiding, dismissing Ford's complaint against Kenosha County, its officials, agents, officers, and employees.

The issue certified on appeals is: "does the doctrine of judicial immunity extend to representatives of the clerk of court's office and the district attorney's office and thereby shield them from liability for an arrest resulting from an erroneously issued bench warrant?" The circuit court found that since the bench warrant was issued at the direction of the judge, the clerical personnel and assistant district attorney are not subject to liability. The court dismissed the complaint for failure to state a claim upon which relief may be granted.

We conclude that the assistant district attorney, in submitting the bench warrant to the judge as alleged in the complaint,[1] was acting as an advocate, and is there-

---

[1]Pertinent paragraphs of the complaint alleged:

16. That, upon information and belief, clerical personnel for the Kenosha County Clerk of Courts' Office, District Attorney's Office and Joint Services are responsible for submitting the warrant to an unknown Assistant District Attorney who then submitted the warrant to the Honorable Jerold W. Breitenbach, Kenosha County Circuit Court, Branch 6.

17. That the act of said unknown agents, employees, and officers, in preparing and submitting the warrant, was an administrative act, not connected with the discretionary function of either the District Attorney's Office or the Clerk's Office, and said conduct was performed in a negligent manner resulting in the plaintiff's arrest when he was held over by a member of the Wauwatosa Police Department on January 30, 1987.

18. That the acts and conduct of the defendants, although not purposefully or recklessly inflicted, were performed in a negligent

fore absolutely immune from liability. Clerical personnel, in preparing the bench warrant, which was accepted and signed by the judge, were performing a quasi-judicial act and are absolutely immune from liability under the doctrine of quasi-judicial immunity. Accordingly, we affirm the order of the circuit court dismissing Ford's complaint.

In examining the complaint, we must accept as true the facts pleaded and all inferences therefrom. *Production Credit Ass'n. v. Croft*, 143 Wis. 2d 746, 751, 423 N.W.2d 544 (Ct. App. 1988). The facts alleged in the complaint are as follows: On December 3, 1985, Ford wrote a check for insufficient funds. He was later criminally charged with issuing a worthless check. Pursuant to an "authorization to appear," Ford's attorney appeared on his behalf before the circuit court of Kenosha County and entered a plea of "either no contest or guilty to an amended ordinance violation." On July 7, 1986, Ford paid a fine for the ordinance violation.[2] Nowhere in the complaint is it alleged that the misdemeanor charges were dismissed. On July 11, 1986, an assistant district attorney for Kenosha County submitted a bench warrant to Judge Breitenbach for Ford's arrest.[3] The complaint alleged that clerical personnel for

manner resulting in the detention, arrest, and custody of the plaintiff.

[2]The "*Response to Motion for Summary Judgment by Ray Gramm and Notice of Motion and Motion to Dismiss by Kenosha County*," document No. 17 in the record, filed July 31, 1988, alleged that the fine was paid on September 8, 1986.

[3]The complaint states that "the Honorable Jerold W. Breitenbach was submitted [sic] with a warrant to be signed indicating that said plaintiff missed a court appearance on or about July 11, 1986 . . .." It is unclear from reading this phrase what occurred on July 11, 1986: the submission of the bench warrant or Ford's missed court appearance or both. Other parts of the record

the offices of the Kenosha County clerk of court, district attorney and joint services[4] were responsible for preparing the bench warrant and submitting it to the assistant district attorney. Judge Breitenbach signed the bench warrant. On or about January 30, 1987, Ford was "pulled over" by a City of Wauwatosa police officer for operating a vehicle with a defective taillight. The police officer informed Ford that the Kenosha Police Department had an outstanding warrant for his arrest. Unable to post the $500 bond, Ford was held in custody for five hours.

On February 1, 1988, Ford filed a complaint alleging that the assistant district attorney and clerical personnel were negligent in preparing and submitting the bench warrant for Ford's arrest. As a result, the "arrest and imprisonment of the plaintiff was [sic] negligent" and were in violation of Ford's "rights protected by state and federal law."

We reach our conclusions based on the "facts" Ford alleged in the complaint. However, Ford furnished the circuit court (Judge Fisher) with a more complete statement of what occurred in the document entitled *"Response to Motion for Summary Judgment by Ray Gramm and Notice of Motion and Motion to Dismiss by Kenosha County."* It recites that on May 22, 1986, attor-

---

lead us to the conclusion that on July 11, 1986, the assistant district attorney submitted the bench warrant to Judge Breitenbach. Since the bench warrant is not part of the record, we do not know the date on which Ford was alleged to have missed a court appearance. However, the complaint, at paragraph seven, alleges "[t]hat at no time did the defendant ever fail or refuse to appear before the Court in the case entitled *State of Wisconsin v. Darryl Ford,* Case No: 86-CM-418."

[4]The director of joint city and county services was dismissed from the case by agreement of the parties on a motion for summary judgment by the director and is not a party to this appeal.

ney Chandler appeared on behalf of Ford in the initial appearance on the criminal complaint "alleging the writing of a worthless check."

> [T]he Court Commissioner set a pretrial before the Honorable Jerold W. Breitenbach . . . on July 7, 1986 at 1:00 P.M. On July 7, 1986, [no hour mentioned] in fact John Chandler appeared on behalf of [Ford] before [Judge Breitenbach,] and Christopher Coakley represented the State. A plea bargain was arrived at, and the worthless check misdemeanor ordinance [sic] was reduced to a county ordinance violation . . . [a] bench warrant request made by Susan Remkus, then Assistant District Attorney . . . apparently was granted by Judge Breitenbach *prior to the Coakley appearance* . . . (emphasis added).[5]

---

[5]In response to the dissent: in *Morgan,* this court stated that in a motion to dismiss for failure to state a claim: "the facts pleaded and all reasonable inferences from the *pleadings* must be taken as true, but legal conclusions and unreasonable inferences need not be accepted." 87 Wis. 2d at 731 (emphasis added). Chapter 802 of the Wisconsin Statutes governs pleadings, motions and pretrial practice. "Pleadings," include a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint, and a third-party answer. *See* sec. 802.01(1), Stats. 1987–88. "No other pleadings shall be allowed, except that the court may order a further pleading to a reply or to an answer." *Id.*

We draw our inferences from Ford's "pleading," i.e., his complaint. The dissent claims that "the plaintiff in his response brief to the defendant's motion to dismiss clearly suggested, as it also reasonably can be inferred from the complaint, that this negligence involved the clerk's handling and processing of the court's dismissal of criminal charges after the warrant was submitted." Dissent, p. 511. We conclude that Ford's brief in response to Kenosha County's motion to dismiss detracts from the dissent's position, as shown, *supra,* i.e. the judge's grant of the request for the bench warrant set the events in motion. However, as previ-

Bench warrants are usually issued for failure to appear in court.[6] However, the record does not show nor does the complaint state why Ms. Remkus made such a request which was granted by Judge Breitenbach.

Kenosha County filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted. The County argued that "[it] does not matter who drafted . . . a bench warrant, because [it] is totally ineffective until the judicial officer approves . . . by subscribing his name thereto, thus making it the court's . . . warrant." Therefore, the County concluded that "each named defendant is immune from suit under the doctrine of judicial immunity." Moreover, Kenosha County claimed that the assistant district attorney is absolutely immune from liability while performing acts which are an integral part of the judicial process; and, as an attorney, the assistant district attorney is immune from liability against suit by a third party, absent fraud or malice.

The court granted Kenosha County's motion to dismiss the complaint. The court found that the judge is "in control and responsible." Since the judge issued the bench warrant, the assistant district attorney and clerical personnel, as "supporting actors," are not subject to liability.

---

ously stated, we confine our conclusion to the "facts" Ford alleged in his complaint.

While we agree with the dissent that "any set of additional facts which would support Ford's negligence claim must also be taken as true" (dissent, pp. 516–517), we cannot infer additional "facts" which do not support the specific factual allegations Ford has set forth in his complaint. *See supra,* n.1. Therefore, we do not accept the inferences the dissent would draw.

[6]*Infra,* n 8.

Ford appealed, and the court of appeals certified the case to this court. We accepted the certification.

In reviewing the circuit court's dismissal of the complaint, we are faced with a question of law. *Dean v. Ehrhart,* 147 Wis. 2d 174, 176, 432 N.W.2d 658 (Ct. App. 1988). Therefore, we owe no deference to the circuit court's decision. *Id.* Since fair notice of a claim is all that is required of a pleading, the test we apply to the complaint is whether the defendants have been given notice of the general nature of the plaintiff's claim. *CEW Mgmt. Corp. v. First Fed. Savings & Loan,* 88 Wis. 2d 631, 636, 277 N.W.2d 766 (1979); *Hertlein v. Huchthausen,* 133 Wis. 2d 67, 72, 393 N.W.2d 299 (Ct. App. 1986). We are not concerned with whether the allegations, if proven, entitle the plaintiff to recover. *CEW,* 88 Wis. 2d at 636.

The complaint alleges that clerical personnel for the Kenosha County clerk of court's office and district attorney's office negligently prepared the bench warrant for Ford's arrest and negligently submitted it to the assistant district attorney. The complaint also alleges that on July 11, 1986, the assistant district attorney negligently submitted the bench warrant to Judge Breitenbach. As to the clerical personnel, we find that the complaint gives the defendants sufficient notice of the claim of negligence against them. We also find that the complaint gives the assistant district attorney sufficient notice of the claim of negligence against her.

Even though a liberal construction of the complaint meets the requirement of notice pleadings, if "it is quite clear that under no conditions can the plaintiff recover," we will affirm the dismissal of the complaint because it is

494

based on a legally insufficient claim. *Morgan v. Pennsylvania Gen. Ins. Co.,* 87 Wis. 2d 723, 731, 275 N.W.2d 660 (1979) (quoting Clausen & Lowe, *The New Wisconsin Rules of Civil Procedure, Chapters 801–803,* 59 Marq. L. Rev. 1, 54 (1976)). Kenosha County, in its motion to dismiss the complaint, claims that it is clear Ford cannot recover because the clerical personnel and the assistant district attorney are immune from liability.

An immunity is a "freedom from suit or liability." Prosser & Keeton, *The Law of Torts,* 1032, sec. 131 (5th ed. 1984). Unlike a privilege, an immunity is conferred upon a defendant because of the status or position of the defendant, not because of the existence of a particular set of facts or the moral justification of an act. *Id.* Additionally, an "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White,* 484 U.S. 219, 227 (1988). For example, a judge, when performing judicial acts within the judge's jurisdiction, is absolutely immune from liability for damages. *Stump v. Sparkman,* 435 U.S. 349, 356–364 (1978).

The theory of immunity, as stated by Judge Learned Hand, is that "it is better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949), *cert. denied,* 339 U.S. 949 (1950).[7] To allow unsatisfied litigants to sue a judge would "contribute not to principled and fearless decision-making but to intimidation." *Pierson v. Ray,* 386 U.S. 546, 554 (1966). The

---

[7]Although some cases cited in this opinion are actions brought under 42 U.S.C. section 1983, these cases have been decided in harmony with common law principles of tort immunity and defenses. *See Imbler,* 424 U.S. at 418.

question is: does a similar policy support immunity for the clerical personnel and the assistant district attorney, as held by the circuit court?

## CLERICAL PERSONNEL

In *Steele v. Dunham,* 26 Wis. 393, 398 (1870), this court stated that:

> no public officer is responsible in a civil suit *for a judicial determination,* however erroneous it may be, and however malicious the motive which produced it. *Such acts, when corrupt, may be punished criminally; but the law will not allow malice and corruption to be charged in a civil suit against such an officer for what he does in the performance of a judicial duty. The rule extends to judges from the highest to the lowest, to jurors, and to all public officers, whatever name they may bear, in the exercise of judicial power* (emphasis added).

*See also Wasserman v. Kenosha,* 217 Wis. 223, 258 N.W. 857 (1935) and *Land, Log & Lumber Co. v. McIntyre,* 100 Wis. 258, 75 N.W. 964 (1898) (holding no public officer responsible in civil liability for judicial acts of malice or corruption).[8] The rule in *Steele* was modified

---

[8]*But see* discussion in *Scarpaci v. Milwaukee County,* 96 Wis. 2d 663, 700–701, 292 N.W.2d 816 (1980), finding a division of authority on the question of whether a quasi-judicial officer should be given immunity when acting with malice or for an improper purpose. This split in decisions stemmed from the court's reliance on *Corrao v. Mortier,* 7 Wis. 2d 494, 96 N.W.2d 852 (1959). *Corrao* held that the power to issue a license or permit is quasi-judicial, and "an officer performing such a function is exempt from liability for error or mistake of judgment in the absence of a corrupt or malicious motive." *Id.* at 498 (citing *Paoli v. Mason,* 325 Ill. App. 197, 59 N.E.2d 499 (1945)). The court in *Corrao* did not follow the long line of authority in Wisconsin

by *Lowe v. Conroy,* 120 Wis. 151, 160, 97 N.W. 942 (1904), which held that the discretion of quasi-judicial officers must be limited where their acts invade the private property rights of others, and where the only means of redress is an action against the officer.

Other courts have recognized that non-judicial officers, including clerks of court, acting within the scope of their duty, enjoy absolute immunity from civil liability when performing duties which have an integral relationship with the judicial process. *Eades v. Sterlinske,* 810 F.2d 723 (7th Cir.) *cert. denied,* 484 U.S. 847 (1987) (court reporter and judge's clerk absolutely immune for filing a false certificate summarizing an instruction conference and altering the docket to reflect the falsity); *Ashbrook v. Hoffman,* 617 F.2d 474 (7th Cir. 1980) (commissioners, appointed by the court to conduct a partition sale, held absolutely immune for conduct in handling sale and distributing proceeds of sale); *Denman v. Leedy,* 479 F.2d 1097 (6th Cir. 1973) (clerk of court held absolutely immune for failing to fix bail in a misdemeanor case); *Silver v. Dickson,* 403 F.2d 642 (9th Cir. 1968), *cert. denied,* 394 U.S. 990 (1969) (state parole board members held absolutely immune from liability in processing parole applications); *see also,* Annotation, *Judicial Immunity—Acts of Clerk of Court,* 34 A.L.R.4th 1186 (1984).

In these cases, the non-judicial officers were performing quasi-judicial duties akin to those performed by judges. The same policy that supports absolute immunity for judges justifies absolute immunity for non-judi-

---

which does not make an exception under quasi-judicial immunity for acts of malice or improper purposes. *See Wasserman,* 327 Wis. 223; *Land, Log & Lumber Co. v. McIntyre,* 100 Wis. 258; *Steele,* 26 Wis. 393.

cial officers when they are performing acts "intimately related to the judicial process." *Ashbrook,* 617 F.2d at 476. "[A] nonjudicial officer who is delegated judicial duties in aid of the court should not be a 'lightning rod for harassing litigation' aimed at the court." *Id.*

The judge's absolute immunity is termed judicial immunity. *Stump v. Sparkman,* 435 U.S. 349; *See also Bradley v. Fisher,* 80 U.S. (13 Wall.) 335 (1871). Nonjudicial officers, on the other hand, are said to be cloaked with a "quasi-judicial" absolute immunity. *Ashbrook,* 617 F.2d at 476. This "[a]bsolute immunity defeats the suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman,* 424 U.S. 409 at 419 n.13 (1976).

Equally well recognized is the principle that nonjudicial officers, when performing ministerial duties, are not absolutely immune from liability but are cloaked with a "qualified immunity." *Lowe v. Letsinger,* 772 F.2d 308 (7th Cir. 1985) (clerk of court not absolutely immune from liability for concealing entry of order vacating defendant's conviction); *McCray v. Maryland,* 456 F.2d 1 (4th Cir. 1972) (clerk not absolutely immune from liability for negligence which impeded filing of court papers); *see Pavlik v. Kinsey,* 81 Wis. 2d 42, 50, 259 N.W.2d 709 (1977); *see also,* 34 A.L.R.4th 1186.

Qualified immunity is not relevant to the plaintiff's cause of action, but is a defense available to the official in question. *Gomez v. Toledo,* 446 U.S. 635 at 640 (1980). "The fate of an official with qualified immunity depends upon the circumstances and motivations of his actions as established by the evidence at trial." *Imbler,* 424 U.S. at 419 n.13. "It is the existence of reasonable grounds for the belief formed at the time and in light of all the

circumstances, coupled with good-faith belief, that affords a basis for qualified immunity . . .." *Gomez,* 446 U.S. at 641. The official must be acting sincerely, with a belief that he is doing right. *Id.*

A ministerial act, to which qualified immunity applies, is one which is "absolute, certain, and imperative, involving merely the performance of a specific task where the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Pavlik,* 81 Wis. 2d at 50 (quoting *Lister v. Board of Regents,* 72 Wis. 2d 282, 300–301, 240 N.W.2d 610 (1976)). Ministerial acts have also been defined as "those done in obedience to instructions of a legal authority without the exercise of the actor's discretion or judgment upon the propriety of the act being done." *State v. Johnston,* 133 Wis. 2d 261, 267, 394 N.W.2d 915 (Ct. App. 1986).

We hold that even when a non-judicial officer performs a ministerial function, but *at the direction of a judge* who is acting in a judicial capacity, that officer is cloaked with absolute immunity from civil liability. We note that this holding has also been reached in the majority of the United States Circuit Courts. *Foster v. Walsh,* 864 F.2d 416 (6th Cir. 1988); *Rogers v. Bruntrager,* 841 F.2d 853 (8th Cir. 1988); *Henry v. Farmer City State Bank,* 808 F.2d 1228 (7th Cir. 1986); *Slotnick v. Garfinkle,* 632 F.2d 163 (1st Cir. 1980); *Williams v. Wood,* 612 F.2d 982 (5th Cir. 1980); *Waits v. McGowan,* 516 F.2d 203 (3d Cir. 1975).

By following the judge's order, the non-judicial officer is acting as a hand of the court. The nature of the function performed is "judicial." Therefore, the act is a

quasi-judicial act, even though it may be non-discretionary. *See Foster v. Walsh,* 864 F.2d at 418.

In the case before us, the clerical personnel of the clerk of court's office and district attorney's office are alleged to have negligently prepared the bench warrant and negligently submitted it to the assistant district attorney. Such action could only become effective when accepted and signed by the judge, thus making it a judicial act; for according to section 968.09, Stats., 1987–88, only "the court may issue a bench warrant."[9]

Ford's complaint appears to rely on the sequence of events leading to the signing of the bench warrant, alleging that personnel in the clerk's office or district attorney's office drafted and submitted the bench warrant to the assistant district attorney, who, in turn, submitted the bench warrant to the judge. The complaint also stated, that in preparing and submitting the warrant, they engaged in an "administrative act" which was not a "discretionary function." Whether the act of preparation is regarded as "administrative," ministerial, or discretionary, once the judge signed the bench warrant, it became a judicial act. Those who initiated it or assisted in its preparation were thus engaged in a judicial act.

This court previously addressed the liability of a clerk of court in *Langen v. Borkowski,* 188 Wis. 277, 206 N.W. 181 (1925). The court in *Langen* found that when

---

[9]Section 968.09, Stats., provides:

**Warrant on failure to appear. (1)** When a defendant or a witness fails to appear before the court as required, or violates a term of his bond or his probation, if any, the court may issue a bench warrant for his arrest which shall direct that he be brought before the court without unreasonable delay. The court shall state on the record at the time of the issuance of the bench warrant the reason therefor.

**(2)** Prior to the defendant's appearance in court after his arrest under sub. (1), ch. 969 shall not apply.

acting under the direction of a judge, "the clerk is responsible only where he refuses to discharge his duty, when requested by the judge, or where he is guilty of fraud in collusion with the judge." *Id.* at 300. Our holding concerning the acts of the clerical personnel in the present case is consistent with the reasoning of *Langen.*

Ford's complaint does not allege that the clerical personnel refused to discharge their duties, nor does it allege that they acted in collusion with the judge in committing fraud. According to the complaint, all the clerical personnel did was draft a bench warrant signed by the judge. It would be beyond the scope of their duties to second-guess the judge's order. The clerical personnel do not act as a "back-up," verifying the judgment of the court in issuing a bench warrant.

We hold that the clerical personnel are absolutely immune from any negligence in preparing and submitting the bench warrant. We therefore affirm the circuit court's dismissal of Ford's complaint as to the clerk and clerical personnel in the office of the clerk and district attorney.

## ASSISTANT DISTRICT ATTORNEY

Ford's counsel argues as persuasive the conclusions reached in the case of *McSurely v. McClellan,* 697 F.2d 309 (D.C. Cir. 1982). Ford cites *McSurely* for the holding that "preparation of the arrest and search warrants and participation in the search and seizure are nonadvocative," as applied to the assistant district attorney.

We do not find the *McSurely* case supportive of Ford's position. There is a difference between an arrest warrant in the initiation of criminal proceedings and a

bench warrant that is part of a case already in progress. As stated elsewhere in this opinion, we hold that a request for or acquiescence in issuance of such a warrant is merely an aid or help in the advocative functions of a district attorney.

There are other significant differences in *McSurely* and the case before us as well. *McSurely* is an action under 42 U.S.C. sections 1981, 1983 and 1985, and under the First, Fourth, Fifth, and Fourteenth amendments to the United States Constitution for damages for deprivation of constitutional rights under color of state law. The action before us is not. The facts are entirely different. In *McSurely,* Mr. McSurely and his wife were engaged in various political activities as field organizers for a group, that among other things, opposed the Vietnam War. This aroused the opposition of certain people in Pike County, Kentucky, including Mr. Ratliff, the public prosecutor. The federal court of appeals described what happened as a result:

> On August 11, 1967, Ratliff and approximately twenty other persons, including local businessmen, the McSurelys' landlord, and a local judge, met at the Pikeville courthouse to discuss the McSurelys' activities and to plan the McSurelys' arrest for sedition and a search of their home. At the meeting, Ratliff stated that a Pike County jury would 'undoubtedly' convict the McSurelys and that, although the conviction would 'probably' be overturned on appeal, 'his purposes would be accomplished by the initial conviction.' He prepared an affidavit for the McSurelys' landlord to sign and then presented the signed affidavit to the local judge, who prepared an arrest warrant for Alan McSurely and a search warrant for the McSurelys' home. The arrest warrant charged McSurely with sedition against the state in violation of Ky. Rev. Stat. sec. 432.040. The search warrant

502

authorized in general terms the seizure of 'seditious matter or printing press or other machinery to print or circulate seditious matter.' In an earlier proceeding, we found that the affidavit, . . . did not 'support a finding of probable cause.' . . . We further described the search warrant as 'the very antithesis of the " 'particularity' " required by the Fourth Amendment.' . . .

On the evening of August 11, pursuant to the warrant, Pike County officials, directed by Ratliff, arrested Alan McSurely and searched the McSurelys' home. The search appears to have gone far beyond the warrant's scope . . .. During the search, which lasted several hours, Ratliff discovered that Margaret McSurely had once been employed by the Student Non-Violent Coordinating Committee. He thereupon obtained a warrant for her arrest as well.

*McSurely,* 697 F.2d at 312–13 (footnotes omitted). The state sedition statute was later found unconstitutional on its face. The materials seized were improperly turned over to a United States Senate Committee. In the civil suit brought by McSurely against the public prosecutor and others, we confine ourselves to that portion of the proceedings involving the prosecutor. At one point in the proceedings, Ratliff, the prosecutor, in September 1982, moved to dismiss the complaint, or in the alternative, for summary judgment on grounds of absolute and qualified prosecutorial immunity. *Id.* at 315. The district court ruled against the prosecutor, and he appealed. The court of appeals affirmed. Among other things that court said:

Governmental officials receive either absolute or qualified immunity from suits for damages 'to shield them from undue interference with their duties and from potentially disabling threats of liability.' . . .

503

> Absolute immunity is accorded only to 'the especially sensitive duties of certain officials.' *Id.* Thus, for example, judges possess absolute immunity for all judicial acts, *Stump v. Sparkman,* 435 U.S. 349, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978), and prosecutors possess absolute immunity with respect to the initiation and pursuit of prosecution, *Imbler v. Pachtman,* 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976) . . ..
>
> This functional analysis confines absolute prosecutorial immunity to 'quasijudicial' actions. As this court has repeatedly held, a prosecutor engaged in essentially investigative or administrative functions receives only the lesser protection of qualified immunity . . ..

*Id.* at 318 (citations omitted). The court in *McSurely* further analyzed *Imbler v. Pachtman,* 424 U.S. 409 (1976), a case cited by Ford here, and said:

> *Imbler v. Pachtman,* 424 U.S. at 421–24, 96 S. Ct. at 990–92, defined insulation of the prosecutor's role in the judicial process as a primary justification for absolute immunity. In line with this rationale, a prosecutor receives absolute immunity only when he acts as an 'advocate,' that is, in his role as a participant in the judicial phase of the criminal process . . ..
>
> Advocacy, as *Imbler* recognized, may take a prosecutor beyond the confines of the courtroom:
>
> > 'A prosecuting attorney is required, constantly, in the course of his duty as such, to make decisions on a wide variety of sensitive issues. These include questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other

evidence to present. Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluation of evidence.'

*Imbler v. Pachtman,* 424 U.S. at 431 n.33, 96 S. Ct. at 995 n.33. Advocacy, however, encompasses only those activities that are 'intimately associated with the judicial phase of the criminal process,' " *id.* at 430, 96 S. Ct. at 995; . . .

*Id.* at 319. We conclude that decisions surrounding issuance of bench warrants are advocacy "intimately associated with the judicial phase of the criminal process." We conclude that *McSurely* and *Imbler* militate against the conclusions that Ford would have us draw in this case.

Ford's counsel also cites several cases in which a non-client plaintiff was able to maintain suit against a negligent attorney. *See Matter of Revocable Trust of McCoy,* 142 Wis. 2d 750, 419 N.W.2d 301 (Ct. App. 1987); *Strid v. Converse,* 111 Wis. 2d 418, 331 N.W.2d 350 (1983); *Goerke v. Vojvodich,* 67 Wis. 2d 102, 336 N.W.2d 211 (1975).

The court in *McCoy* held that if a trustee breaches a fiduciary duty to the beneficiary of a trust, the beneficiary may maintain a suit for negligence against the trustee. *Id.* at 758. *McCoy* is not applicable to the actions of the assistant district attorney, however, because its holding only applies to trusts. The court in *Goerke* and *Strid* cited with approval a statement appearing in 7 C.J.S., *Attorney and Client,* p. 834, sec. 426:

' "While an attorney is not liable to a third person for acts performed in good faith, and *mere negligence on the part of an attorney is insufficient to give a right of action to a third party injured thereby,* an attorney is personally liable to a third party who sustains an

505

injury in consequence of his wrongful act or improper exercise of authority where the attorney has been guilty of fraud or collusion, or of a malicious or tortious act . . .." '

*Strid,* 111 Wis. 2d at 429 (citing *Goerke,* 67 Wis. 2d at 102) (emphasis added). *McCoy, Goerke* and *Strid* did not involve quasi-judicial acts of a district attorney and are not in point.

We conclude the assistant district attorney in this case enjoyed absolute immunity. In *Riedy v. Sperry,* 83 Wis. 2d 158, 168, 265 N.W.2d 475 (1978), this court recognized that "prosecuting attorneys, when acting within the scope of their prosecutorial functions, are absolutely immune from damages . . .." This holding is based on the theory that a prosecutor, when acting as an advocate, is performing a quasi-judicial function. *Id.* Prosecutors must exercise a discretionary judgment, based on the evidence presented to them. *Imbler,* 424 U.S. at 409 n.20. "It is the functional comparability of their judgments to those of the judge that has resulted in . . . prosecutors being referred to as 'quasi-judicial' officers, and their immunities being termed as 'quasi-judicial' as well." *Id.*

This court has held that a prosecutor, when performing investigatory or administrative functions, is not absolutely immune from liability. *Riedy,* 83 Wis. 2d at 168. In these situations, a prosecutor is entitled to a qualified immunity. *Id.* If the prosecutor asserts a "good-faith defense" by showing he acted in good faith with a reasonable belief that his actions were correct, he will be immune from liability. *Id.*

Kenosha County has asked us to adopt the test for judicial immunity employed in *Stump v. Sparkman,* 435 U.S. at 362, and apply it to the assistant district attor-

ney. Substituting "prosecutor" for "judge," the test would ask: (1) Is the act a function normally performed by prosecutor, and (2) Did the party deal with the prosecutor in a prosecutorial capacity? If both parts of the test are satisfied, the prosecutor would have absolute immunity for the act in question.

In the present case, submitting the bench warrant to the judge is a function normally performed by a prosecutor. The first part of the test is satisfied. In addition, when the prosecutor submits the bench warrant to the judge, the party named in the warrant is dealing with the prosecutor in his prosecutorial capacity. The second part of the test is also satisfied. Under the *Stump* test, the assistant district attorney would be absolutely immune from liability for negligently submitting the bench warrant to the judge. In addition, if the submission of the bench warrant is arguably considered a prosecutorial act, the assistant district attorney would be absolutely immune under the traditional dichotomy test of *Imbler* as well.

We do not accept the county's application of the *Stump* test; because although the application of the *Stump* test and the traditional dichotomy test of *Imbler* may produce the same result in the case at bar, it does not preserve the traditional dichotomy test of *Imbler* for every act in question. Using the preparation of a search warrant as an example of an act in question, such an act is normally performed by a prosecutor. The first part of the *Stump* test is satisfied. It is also within a prosecutor's prosecutorial capacity with respect to the party being searched, to prepare a search warrant. The second part of the test is also satisfied. Under the *Stump* test, then, absolute immunity would apply. However, the preparation of a search warrant is part of an investigatory act. It is part of the process of obtaining evidence in

support of a charge. Under the traditional dichotomy test, employed by the court in *Imbler,* absolute immunity would not apply. For this reason, we do not apply the *Stump* test to the acts of the assistant district attorney.

In *Imbler,* the court stated:

> The office of public prosecutor, is one which must be administered with courage and independence. Yet how can this be if the prosecutor is made subject to suit by those *whom he accuses and fails to convict?*

424 U.S. at 423–424 (emphasis added). It is the decision to charge, and the carrying out of that charge that warrants absolute immunity. *Id.* at 424. The fact that an act is performed preliminary to the prosecution or apart from the courtroom, however, does not preclude a finding that the act is advocative and thereby warranting absolute immunity. *Id.* at 431 n.33. These acts carry a greater risk of inciting retaliatory litigation, the very risk that absolute immunity is meant to obviate.

Under the test set forth in *Imbler,* adopted in *Riedy,* submitting the bench warrant to the judge was a prosecutorial or advocative act in the original case. If Ford did not appear, the court could not proceed with the case. Submitting the bench warrant to the judge was an essential element in carrying out the charge. Therefore, it warrants absolute immunity. *See Imbler,* 424 U.S. at 424.

Because we find the assistant district attorney immune under *Imbler,* we do not find it necessary to consider other theories of immunity advanced by the County.

We conclude that as a matter of law, even a request by a district attorney for a bench warrant to assure

appearance by a defendant in a criminal action is clearly within the advocative functions of the district attorney. It carries with it absolute immunity under the facts alleged in the complaint here.

The complaint here specifically states at paragraph eighteen thereof "[t]hat the acts and conduct of the defendants, although not purposefully or recklessly inflicted, were performed in a negligent manner . . .." We hold that under the facts alleged in this case, mere negligence in seeking or obtaining a bench warrant from a judge by a district attorney is not actionable. Negligent failure to discover that such a warrant had been sought by an office associate and granted by a judge in a case actually dismissed is not actionable. Accordingly, we affirm the circuit court's dismissal of Ford's complaint as to the district attorney or assistant district attorneys.

We therefore affirm the judgment of the circuit court dated May 19, 1989 in favor of the defendant, Kenosha County and its officials, agents, officers and employees and against the plaintiff, Darryl E. Ford, dismissing this action on its merits and granting costs and disbursements to the County.

*By the Court.*—The judgment of the circuit court is affirmed.

CHIEF JUSTICE HEFFERNAN (dissenting in part). Because this court is obligated to liberally construe pleadings with a view to "substantial justice" to the parties and because the allegations and inferences in the plaintiff's complaint do not establish that the clerk of circuit court's office acted at the direction of the judge, I would reverse the trial court's dismissal for failure to state a claim against the clerical personnel. Accordingly, I dissent in part.

509

Wisconsin's rules of civil procedure provide for notice pleading. Under sec. 802.02(1)(a), Stats., a party's claim for relief need only contain "[a] short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief." Our rules also expressly provide that "[a]ll pleadings shall be so construed as to do substantial justice." Section 802.02(6), Stats. *See also Grams v. Boss,* 97 Wis. 2d 332, 351–52, 294 N.W.2d 473 (1980).

This case arises out of a judgment granting a motion to dismiss for failure to state a claim under sec. 802.06(2)(f), Stats. As this court stated in *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 731–32, 275 N.W.2d 660 (1979):

> The purpose of the complaint is to give notice of the nature of the claim; and, therefore, it is not necessary for the plaintiff to set out in the complaint all the facts which must eventually be proved to recover. [Citation omitted.] The purpose of a motion to dismiss for failure to state a claim is the same as the purpose of the old demurrer—to test the legal sufficiency of the claim. [Citation omitted.] Because the pleadings are to be liberally construed, a claim should be dismissed as legally insufficient only if "it is quite clear that under no conditions can the plaintiff recover." Clausen and Lowe, *The New Wisconsin Rules of Civil Procedure, Chapters 801–803,* 59 Marq. L. Rev. 1, 54 (1976). The facts pleaded and all reasonable inferences from the pleadings must be taken as true, but legal conclusions and unreasonable inferences need not be accepted. [Citation omitted.]
>
> Sec. 802.06(2)(f), Stats., on which the motions to dismiss were based, is similar to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A claim should not be dismissed under the Wisconsin rule or the federal

> rule unless it appears to a certainty that no relief can be granted under any set of facts that plaintiff can prove in support of his allegations. [Citations omitted.]

*See also American Medical Transport v. Curtis-Universal,* 154 Wis. 2d 135, 156, 452 N.W.2d 575 (1990).

As it pertains to the liability of the clerk's office (hereinafter "clerk"), the gist of the plaintiff's complaint is that "the acts and conduct" of the clerk "were performed in a negligent manner resulting in the detention, arrest, and custody of the plaintiff." Although the complaint generally focuses on the clerk's preparation and submission of the warrant to the district attorney's office, the plaintiff in his response brief to the defendant's motion to dismiss clearly suggested, as it also reasonably can be inferred from the complaint, that this negligence involved the clerk's handling and processing of the court's dismissal of criminal charges after the warrant was submitted.

While the majority sets forth the correct law as it regards the quasi-judicial immunity extended to clerical personnel, its application of the law to the facts of this case is erroneous and fails to further the policies and purposes of clerical immunity. To be sure, the majority recognizes that clerks are not absolutely immune from liability when they engage in ministerial acts. It is accepted that "[a] clerk of court who neglects or omits a ministerial task is liable for damages to one injured by the negligence or omission." *See Cook v. City of Topeka,* 232 Kan. 334, 339, 654 P.2d 953 (1982) (citing 15A Am. Jur. 2d, *Clerks of Court,* secs. 27, 28, pp. 163–65; 14 C.J.S., *Clerks of Court,* sec. 53, pp. 1252–53).

The policy behind holding clerks liable for the negligent performance of ministerial tasks is clear. "[T]he threat of possible tort liability does not 'unduly inhibit'

the clerk in the discharge of his duties" because such clerical duties are not discretionary. *See McCray v. State of Maryland,* 456 F.2d 1, 4–5 (4th Cir. 1972). Immunity is more broadly extended to district attorneys and judges, on the other hand, exactly because potential liability would "skew" or "shade" their decisions and cause them not to exercise their independent judgment. *See Forrester v. White,* 484 U.S. 219, 223–24 (1988); *Imbler v. Pachtman,* 424 U.S. 409, 423 (1976). A clerk's mandatory duties are usually set out in state statutes, and consequently a clerk's negligent omission to perform them subjects him or her to liability. *See Dalton v. Hysell,* 56 Ohio App. 2d 109, 110, 381 N.E.2d 955 (1978). In Wisconsin, a clerk's mandatory duties are set out at secs. 59.39 and 59.395, Stats., and clearly include the proper filing and indexing of all court documents. A negligent omission of such duties in Wisconsin, therefore, should also usually result in liability. *Cf. Wisconsin Mortgage & Securities Co. v. Kriesel,* 191 Wis. 602, 608, 211 N.W. 795 (1927); *Schnur v. Hickcox,* 45 Wis. 200, 203 (1878).

It appears that the only exception to this general rule of liability for ministerial acts, moreover, is when the clerk acts at the direction or request of the court. *See Langen v. Borkowski,* 188 Wis. 277, 283–85, 206 N.W. 181 (1925). *See also Dellenbach v. Letsinger,* 889 F.2d 755, 762–63 (7th Cir. 1989); *Foster v. Walsh,* 864 F.2d 416, 417–18 (6th Cir. 1988). The policy and purpose behind this rule is equally clear—litigants who are disappointed with the performance of an absolutely immune but culpable judicial officer should not be allowed to vent their frustration on ministerial clerks who are merely following orders. *See Scruggs v. Moellering,* 870 F.2d 376 (7th Cir. 1989); *Ashbrook v. Hoffman,* 617 F.2d 474, 476

(7th Cir. 1980). As an Indiana appellate court insightfully noted, however:

> [T]he limited immunity given court clerks [when acting at the direction of the court] is probably better described as "derivative" as opposed to "quasi-judicial." It stems from a desire to protect officers of the court who do nothing more than obey court orders for which the issuing judge would be held immune. Such a rationale in no way supports the protection of ministerial officers who are guilty of misfeasance or nonfeasance in the undertaking of their duties.

*Poole v. Clase,* 455 N.E.2d 953, 959–60 (Ind. App. 1983).

In summary, this exception can only be applied where, in addition to acting at the direction of the court, the clerk is not independently negligent.

Applying the foregoing principles of law to the facts of this case as alleged in the plaintiff's complaint, this court cannot rule as a matter of law that the clerk is absolutely immune. The allegations and reasonable inferences therefrom support the plaintiff's claim for negligence. While it is unclear from the plaintiff's claim in what particulars the clerk was negligent and guilty of misfeasance or nonfeasance, the plaintiff, in conformance with the complaint under our rules of pleading, ultimately could prove a "set of facts" to establish negligent clerical acts not at the direction of the court. *Morgan,* 87 Wis. 2d at 734–35, states: "In addition [to factual allegations in complaint], if any set of facts would support the allegations to make out a legally sufficient claim, these facts must also be considered admitted."

It is well accepted that "a clerk of court may be held liable . . . for negligence or misconduct in issuing a warrant of arrest; for failure properly to docket a judgment; [and] for failure to properly index a judgment." 15A Am.

Jur. 2d, *Clerks of Court,* sec. 28, p. 165 (1976). Again, an exception would only be made, for example, where a clerk issued a warrant at the express direction of the judge. *See Foster,* 864 F.2d at 417–18. The majority fails to mention, moreover, that numerous state courts have faced very similar factual situations where, due to the alleged negligence of a clerk in not properly recording a dismissal of criminal charges or recalling a warrant after a fine was paid, the plaintiff was falsely arrested. All of these state courts hold a clerk liable and not protected by absolute immunity. The "at the direction of the court" exception clearly has no application in these situations. *See generally* Annotation, *Applicability of Judicial Immunity to Acts of Clerk of Court Under State Law,* 34 A.L.R.4th 1186 (1984 and 1990 Supp.).

In *Poole v. Clase,* 455 N.E.2d 953 (Ind. App. 1983), for example, an Indiana court was faced with a similar motion to dismiss. A warrant for the plaintiff's arrest had been issued after he failed to appear in court. Although the plaintiff then paid his fine and the matter was closed, because the outstanding warrant was never recalled the plaintiff was subsequently arrested. Suit was brought alleging the clerk's and assistant clerk's negligence in failing to recall the arrest warrant. *Id.* at 955. The court held that such nondiscretionary clerical actions were nonjudicial, ministerial, and not protected by any immunity. It concluded that:

> [The clerk's] failure to recall the warrant was not the performance mandated by a protected judicial decision. Instead, according to the complaint, she neglected to execute a judicial decision. Such neglect was nonfeasance of a ministerial act for which she may be held liable, assuming, as we must, that to perform the duty would have been within the scope of her employment.

*Id.* at 960.

In *Cook v. City of Topeka,* 232 Kan. 334, 654 P.2d 953 (1982), a bench warrant was similarly issued after the plaintiff failed to appear in court to contest a traffic violation. Although the plaintiff thereafter paid the fine, through an omission in the clerk's office the bench warrant was not recalled and the plaintiff was subsequently arrested. After noting that, under Kansas state statute, clerks had a duty to "file and preserve all papers" (*see id.* at 338), the court reasoned:

> The Clerk has no discretion on whether or not to recall a bench warrant after the traffic fine payment is made. The routine recall of a warrant by the municipal court clerk upon payment of the traffic fine is wholly ministerial in nature. Clerical error in failing to do a ministerial act does not convert the activity into a judicial function.

*Id.* at 339.

Regarding a separate sec. 1983 claim against the clerk apart from the one grounded in negligence, the court also ruled that the clerk's action was not excepted because there was "no indication in the record the clerk did not recall the warrant by virtue of a court order or judicial direction." *Id.* at 343.

In *Dalton v. Hysell,* 56 Ohio App. 2d 109, 381 N.E.2d 955 (1978), an Ohio appellate court reversed a trial court's dismissal of a complaint for failure to state a claim against a clerk who, after the plaintiff had paid a traffic fine, negligently failed to record the payment which led to the plaintiff's subsequent arrest. The court noted that the clerk failed in his statutory duties and that no judicial immunity was applicable because "[t]he Clerk was not carrying out a specific order of the court

515

where judicial immunity would protect him from liability for the judicially mandated act." *Id.* at 111.

In *Calhoun v. City of Providence,* 120 R.I. 619, 390 A.2d 350 (1978), the plaintiff was similarly arrested even though he had previously paid fines for traffic offenses. A negligence action was brought against the state for a clerk's failure to recall a "capias." *Id.* at 620. In vacating the trial court's directed verdict, the Rhode Island Supreme Court found liability "because somebody in the employ of the state 'goofed.' " *Id.* at 633. The court declined to extend the judicial immunity exception because the state was unable to prove "that it was the fault of a judge in failing to recall the capias." *Id.* at 633. In reinstating the jury verdict, the court concluded:

> [T]he jury was well warranted in finding that the lapse which led to this suit occurred in the clerk's office where, because of some bookkeeping slip-up, either the issuance of the capias was never docketed or the recall order was never entered. The clerk, unlike the judge, is not immune to suit because of his failure to perform the ministerial functions imposed upon him by law.

*Id.* at 633–34.

Without further belaboring the point, it will only be noted that various other state court cases have employed the same analysis in factually similar cases. *See e.g., Connell v. Tooele City,* 572 P.2d 697 (Utah 1977); *Mauro v. Kittitas County,* 26 Wash. App. 538, 613 P.2d 195 (1980); *cf. Mills v. Ganucheau,* 416 So. 2d 361 (La. App. 1982).

As stated above, Ford's complaint was erroneously dismissed by the trial court because there were various circumstances under which the plaintiff could recover. While the facts pleaded by Ford must be taken as true,

any set of additional facts which would support Ford's negligence claim must also be taken as true. *See Morgan,* 87 Wis. 2d at 734. The majority's construction of Ford's complaint does "substantial injustice" to the plaintiff and must be rejected. In determining this motion to dismiss for failure to state a negligence claim, this court is not limited to only the specific facts set forth in the complaint. Taking all reasonable inferences from Ford's complaint as true, it becomes readily apparent that this court is possibly faced with a factual scenario not unlike all those faced by the other state courts mentioned above.

First, Ford may, under the allegations of the complaint, prove that the clerk was negligent in carrying out any number of nondiscretionary ministerial duties. As stated above, the clerk's mandatory duties are set out at secs. 59.39 and 59.395, Stats., and include properly filing, docketing, and recording court papers. Ford's entire negligence action revolves around the state's promised dismissal of criminal charges. While Ford did not, in so many words, allege that the misdemeanor charges were in fact dismissed, he states at para. 15 of his complaint that "the matter had long been concluded on July 7, 1986." The reasonable inference from this is that the criminal charge for issuing a worthless check either was, or was supposed to be, dismissed after Ford's attorney reached a plea bargain and entered either a no contest or guilty plea to an amended charged violation and the forfeiture was paid.

Under this reasonable inference, Ford could establish that the clerk, to use the words of the Rhode Island Supreme Court, "goofed" in respect to its record-keeping or filing of the dismissed criminal charges. Ford could prove that the clerk failed to record the dismissal or neglected to fulfill a mandatory duty to notify the dis-

517

trict attorney of this dismissal prior to the submission of the bench warrant "on or about July 11, 1986."[1] Ford might also prove that the clerk neglected to notify the district attorney or the court of the dismissal after the bench warrant was issued, thus causing the warrant never to be recalled. To be sure, the facts surrounding the promised dismissal of the misdemeanor and the clerical duties relative to it are unclear. On a motion to dismiss, however, the court does not search for material issues of fact as on summary judgment. The question here is whether under any conceivable set of facts the plaintiff has a sufficient claim for negligence on which relief can be granted.

Second, Ford could likewise establish that the clerk's negligent actions were not done at the request or direction of the court. The majority's assertion that any negligent actions by the clerk prior to the issuance of the bench warrant thereafter became immune "judicial" actions once the judge signed the warrant is without support. *See* majority op. at 500. The majority's statement that "[i]t would be beyond the scope of [the clerk's] duties to second-guess the judge's order," (*id.* at p. 501), implies that the action of the judge was negligent. There is no allegation or reasonable inference that the judge himself was in any way negligent. Ford is not using the clerk as a " 'lightning rod for harassing litigation' aimed at the court." *See id.* at pp. 497–498. Ford alleges that the clerk's own independent negligence caused him inju-

---

[1]This is what Ford argued in his response brief to Kenosha county's motion to dismiss:

> Even though the secretarial staff had access to both a dismissal and the fact that the same case was to have a bench warrant issued, none of the clerical personnel nor Judy Matrise, the responsible person, notified the Court or notified any of the Assistant District Attorneys that a negligent error had been committed.

ries. The clerk's liability does not derive from the court's culpable conduct. If Ford can prove that the clerk failed to fulfill the requisite ministerial duties, then the "at the direction of the court" exception has no application.

Ford's complaint must be liberally construed to do substantial justice. Wisconsin is a notice pleading state. The majority's narrow focus on the specific facts alleged in Ford's complaint is wholly inconsistent with the spirit of the current rules of pleading. A motion to dismiss is not to be treated as a summary judgment based on a single pleading. While Ford's complaint was not especially artful, it alleged that the clerk's negligent conduct resulted in his wrongful arrest. The reasonable inference from this is that the clerk was negligent in discharge of duty—*i.e.,* there was either misfeasance or nonfeasance. This court cannot determine whether the clerk is absolutely immune until discovery is undertaken and all the facts are known. It was error as a matter of law to dismiss the claim against Kenosha county that is predicated upon the alleged negligence of the clerk's office.

For these reasons I dissent to that part of the majority's affirmance of the judgment of the circuit court.

I am authorized to state that Justice Shirley S. Abrahamson joins in this dissent.